845 F.2d 755
 56 USLW 2706, RICO Bus.Disp.Guide 6940
 Dan E. JONES, Judy L. Jones, and Dan E. Jones Hardwood
Lumber and Milling Company, Inc.,
Plaintiffs-Appellants, Cross-Appellees,
v.
James R. LAMPE, Ronald B. Eversgerd, Joseph P. Heimann,
Sylvia Henken, Justin Vandeloo, and Loretta
Heimann, Bartelso Savings Bank, and
Clint Banc Corp.,
Defendants-
Appellees,
Cross-Appellants.
 Nos. 87-2288, 87-2343.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 19, 1988.
Decided May 10, 1988.
 
 David C. Davis, Runge & Gumbel P.C., Colinville, Ill., for plaintiffs-appellants, cross-appellees.
 William J. Becker, Bruegge & Becker, Breese, Ill., for defendants-appellees, cross-appellants.
 Before BAUER, Chief Judge, FLAUM and KANNE, Circuit Judges.
 BAUER, Chief Judge.
 
 
 1
 This case presents yet another opportunity to clarify the "pattern" requirement of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. Sec. 1961 et seq. Plaintiffs, Dan E. Jones Hardwood, Lumber and Milling Company (DEJ) and Dan and Judy Jones, the stockholders and principal officers of DEJ, allege that Bartelso Savings Bank (the Bank), its officers, directors, and major stockholder, Clint Bank Corp., schemed to defraud them and the Small Business Administration (SBA) in violation of RICO.[1] The district court dismissed the plaintiffs' case on the pleadings for failure to allege sufficiently a "pattern of racketeering activity" as required by RICO.
 
 
 2
 The facts set forth in the pleadings tell the following story.[2] The plaintiffs owed money to the Bank. Sometime in 1981, the Bank began to doubt its ability to recover that money. Consequently, the Bank decided to cover its potential loss with an SBA 90% guaranteed loan. The Bank then "induced" plaintiffs to apply for an SBA loan, intending all along to fraudulently appropriate the loan money to offset plaintiffs' debt. With encouragement from the Bank, the plaintiffs applied for an SBA guaranteed loan. The Bank was named as the participating lender. In its application, plaintiffs requested $200,000 to purchase new machinery and equipment, a new building, and working capital for DEJ. After submitting their loan application to the SBA, the Bank made numerous loans to DEJ by paying and holding over 100 checks amounting to more than $125,000. This was done to "string plaintiffs along" by keeping them "content" and ensuring that DEJ would remain solvent through the closing of the SBA loan. Again, according to the plaintiffs, the Bank intended all along to use the SBA loan proceeds to pay for these unsecured loans and their other debts.
 
 
 3
 The SBA authorized the loan to plaintiffs on December 1, 1981. The plaintiffs allege that in early 1982, the Bank then misappropriated the loan funds by applying the proceeds against plaintiffs' existing indebtedness with the Bank in violation of the restrictions imposed by the SBA and the terms of the loan agreement. To "cover up" this misappropriation, the complaint continues, the defendants sent fraudulent information to the SBA indicating compliance with the loan agreement.
 
 
 4
 In June, 1982, the plaintiffs defaulted on their SBA loan, allegedly due to the Bank's wrongful conversion of the SBA loan proceeds. The Bank then wrote the SBA seeking the guaranteed portion of the loan and, in November, 1982, recovered from the SBA over $191,000. According to the plaintiffs, the date of the coverup ran from as early as December, 1981 until at least April, 1984 and possibly later.
 
 
 5
 The district court granted the defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[3] The court found that, at worst, the defendants were "isolated offender[s]," (citing Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985)), and that the plaintiffs' complaint failed to allege adequately a "pattern of racketeering activity." We affirm.
 
 I.
 
 6
 The "pattern" requirement of RICO is no stranger to this court. Over the past sixteen months, in the wake of Sedima, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346, we have discussed the scope of this requirement at least ten times.[4] Although the Court in Sedima expansively construed the general civil RICO provisions, it nevertheless narrowly defined the "pattern" requirement. 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14; see id. at 528, 105 S.Ct. at 3290 (Powell, J., dissenting). Specifically, the court noted that
 
 
 7
 the definition of a "pattern of racketerring activity" ... states that a pattern "requires at least two acts of racketerring activity," Sec. 1961(5) (emphasis added), not that it "means" two such acts. The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a "pattern." The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of continuity plus relationship which combines to produce a pattern." S.Rep. No. 91-617, p. 158 (1969) (emphasis added).
 
 
 8
 Id. at 496 n. 14, 105 S.Ct. at 3285 n. 14. The Court concluded that the reason for the proliferation of civil RICO lawsuits stems, in part, from the "failure of Congress and the courts to develop a meaningful concept of 'pattern.' " Id. at 500, 105 S.Ct. at 3287.
 
 
 9
 In an effort to develop a more meaningful concept of "pattern," we have attempted to balance Sedima's expansive reading of civil RICO with its narrow reading of the "pattern" requirement. We have focused on the "continuity plus relationship" element discussed by the Court in Sedima and have recognized that both elements must be present. Morgan, 804 F.2d at 975.
 
 
 10
 Thus, in order for the predicate acts to be sufficiently continuous to amount to a pattern of racketerring activity, "the predicate acts must be ongoing over an identified period of time so that they can fairly be viewed as constituting separate transactions, i.e. 'transactions somewhat separated in time and place.' " And at the same time, there must be a "relationship among activities--i.e., activities leading up to coordinated action."
 
 
 11
 Medical Emergency Service Associates (MESA), 844 F.2d 391 at 395. (Citations omitted.)
 
 
 12
 Whether a RICO "pattern" exists is clearly "a fact-specific question encompassing many relevant factors," Appley, 832 F.2d at 1027 (quoting from Marshall & Ilsley, 819 F.2d at 809-10), including: (1) the number and variety of predicate acts and the length of time over which they were committed; (2) the number of victims; (3) the presence of separate schemes; and (4) the occurrence of distinct injuries. See, e.g., MESA, at 395; Liquid Air, 834 F.2d at 1304; Appley, 832 F.2d at 1027; Morgan, 804 F.2d at 975. None of these factors is controlling standing alone, yet together, they provide the lens through which the courts may focus on the existence of "continuity plus relationship."
 
 
 13
 Relying on these principles, we have held that "multiple acts of mail fraud in furtherance of a single episode of fraud involving one victim and relating to one basic transaction cannot constitute the necessary pattern." Tellis, 826 F.2d at 478. Accord, Skycom, 813 F.2d at 818; Marks, 811 F.2d at 1111-12. Continuity also may include an ongoing scheme that threatens to persist in the future. Cf. Illinois Department of Revenue v. Phillips, 771 F.2d 312 (7th Cir.1985); Elliott, 809 F.2d at 350.
 
 
 14
 The approach adopted by this court, therefore, embraces the congressional intent, as interpreted by the Court in Sedima, to promote aggressively private actions for those injured by racketeering activity, Sedima, 473 U.S. at 498, 105 S.Ct. at 3286, without creating irrational results. Our cases demonstrate an expansive reading of civil RICO, but only where a true "pattern" of prohibited activity, not just sporadic or isolated instances of fraud, are shown. Admittedly, this approach has led to confusion for the district courts and litigators. Because we have rejected a per se rule in favor of examining the facts and circumstances of each case in light of the rules and standards we have articulated, we realize that skilled attorneys may artfully plead their civil RICO case so as to prevail over a defendant's motion to dismiss. Nevertheless, it is the task of the district court to carefully scrutinize the allegations contained in the complaint to determine whether they state a claim. Although the court must accept all the plaintiff's allegations as true, Morgan, 804 F.2d at 973, it need not close its eyes to the content of these allegations.
 
 II.
 
 15
 Against this background, we turn to the plaintiffs' complaint. Plaintiffs allege that defendants committed more than 120 predicate acts[5] to injure four victims: DEJ, Dan and Judy Jones, and the SBA. The plaintiffs also allege that the defendants engaged in three distinct and separate schemes: diverting the SBA loan proceeds; granting unsecured loans to the plaintiffs to "string them along"; and lying to the SBA to cover up the misappropriation. Finally, the plaintiffs allege that the Bank wrongfully withheld income belonging to DEJ and the Joneses and forced them into bankruptcy. The plaintiffs also claim the SBA was injured by the loss of the $200,000 loan resulting from the Bank's fraudulent misrepresentation and coverup.
 
 
 16
 The plaintiffs' complaint contains numerous conclusory allegations. For example, it refers continually to the defendants' actions as constituting "another scheme" and describes their actions variously as fraud, extortion, and conversion. Merely stating these conclusions, however, does not make the allegations sufficient. The plaintiffs' characterization of events must be consistent with the facts alleged in the complaint.
 
 
 17
 The facts alleged by plaintiffs, however, show only one general scheme (which took several months to complete), concerned one major transaction (the SBA loan), had four potential victims (the Joneses, DEJ, and the SBA), one distinct injury (wrongful conversion of the loan proceeds), and threatened no repeated harm. These facts do not constitute a "pattern" under civil RICO.
 
 
 18
 Plaintiffs here allege a number of separate schemes to show the continuing nature of the defendant's illegal activities. The plaintiffs' attempt to plead around the single transaction problem by characterizing these activities as "subschemes" does not fulfill the continuity requirement needed to show a pattern. As we said in MESA, at 397,
 
 
 19
 [i]n reality, any "scheme" to defraud can be broken down into its component acts and labeled "subschemes." A label, however, is not dispositive: "the doctrinal requirement of a pattern of racketeering activity is a standard, not a rule, and as such its determination depends on the facts and circumstances of the particular case...." Morgan, 804 F.2d at 976.
 
 
 20
 Looking beyond the allegations, the facts can support but a single scheme. Although we have recognized on rare occasions that "the mere fact that the predicate acts relate to only one overall scheme does not mean that the acts automatically fail to satisfy the pattern requirement," Appley, 832 F.2d at 1027-28 (quoting from Morgan, 804 F.2d at 975-76), accord Liquid Air, 834 F.2d at 1304, this case, unlike Appley and Liquid Air, is not an exception to that general rule. In Appley, the beneficiary of a trust alleged that the trustee defrauded her of substantial assets by embezzling trust funds. The trustee had allegedly committed two predicate acts of mail fraud, both relating to the mailing of monthly bank statements and cancelled checks from a Bank, to conceal his conversion of funds from the plaintiff. While Appley involved only two predicate acts and one scheme, we found a "pattern" under RICO because the trustee sought to defraud the plaintiff not once, but twice in that each act caused a distinct and separate injury: the embezzlement of two distinct sums of money.[6] Id. at 1028.
 
 
 21
 Liquid Air also is distinguishable from this case. There, the plaintiffs, Liquid Air, alleged that the defendants, D & R Welding Supply Co. (D & R) and its shareholders, defrauded them through at least nineteen separate acts of mail and wire fraud over a seven-month period. D & R issued to Liquid Air a series of fraudulent shipping orders to make it appear that it had returned over 3,000 cylinders it had leased from Liquid Air when none had been returned. As part of D & R's scheme to defraud, they hired Ray Bridges, an employee of Liquid Air, to handle the paper work. In return for Bridge's assistance, the defendants set him up in his own business in Peoria, Illinois. In so doing, they not only continued to bilk Liquid Air of its cylinders, but also circumvented a noncompetitive agreement with A.W. Moore Welding (Moore). Liquid Air, 834 F.2d at 1300. We found in Liquid Air that the defendants' conduct, involving "a single scheme which lasted seven months and defrauded a single victim," id. at 1304, constituted a "pattern of racketeering activity." As in Appley, however, we found in Liquid Air that each predicate act caused a distinct and separate injury. "Each time an invoice was falsely prepared, it deprived Liquid Air of its entitlement to rent or replacement value" of the cylinders. Id. We found a "pattern," therefore, because of the repeated injury caused by the defendants. Id. at 1305.
 
 
 22
 This case does not fall within the narrow exceptions of Appley or Liquid Air. Unlike those single-scheme cases, the plaintiffs in this case did not suffer "repeated infliction of economic injury" over time, Liquid Air, 834 F.2d at 1305, nor were they victims of any systematic illegal conduct continuing over time. Rather, the plaintiffs were injured only once (although the impact of this injury may have been longlasting) by the Bank's alleged scheme to use the SBA loan proceeds to offset plaintiffs' debt. We conclude, therefore, that this case is more properly controlled by the long line of recent cases in this Circuit in which we have found no "pattern" under civil RICO. See MESA, at 394-98; Tellis, 826 F.2d at 479-80 (no pattern where multiple predicate acts all clearly relate to some transaction involving a single victim and a single injury); Skycom, 813 F.2d at 818 (no pattern where allegedly fraudulent representations led up to a single contract and the transfer of a single business opportunity); Marks, 811 F.2d at 1112 (no pattern where multiple predicate acts related to a single scheme in a "one-shot" effort to inflict a single injury); Elliott, 809 F.2d at 350 (no pattern where multiple acts of alleged fraud all related to one scheme with one distinct injury and no threat of continuing activity); Lipin, 803 F.2d at 324 (no pattern where multiple acts related to one scheme to defraud on one occasion with no threat of continuing activity).
 
 
 23
 Thus, we agree with the district court that despite the length and apparent complexity of plaintiffs complaint, it closely resembles the "paradigmatic case" discussed and rejected in Morgan as failing to constitute a "pattern." In Morgan, 804 F.2d at 976, the court described a scheme in which a bank defrauds a plaintiff by falsifying a loan application. We noted that although a plaintiff may be able to allege multiple predicate acts (e.g. two or more mailings in connection with the loan transaction), this situation really involves a single transaction occurring at a single point in time, thus failing to meet the "pattern" requirement. Id. The only facts distinguishing this case from the Morgan "paradigm case" is the alleged predicate acts stemming from the Bank's "cover-up" and the unsecured loans. We fail to see how this places the Bank's conduct outside of the single-transaction characterization. If we were to treat every alleged "cover-up" as a separate scheme, every transaction could turn into a "multiple scheme" if the defendant denies wrongdoing. There is only one loan transaction and all the alleged predicate acts and injuries relate to that single arrangement. There were no allegations that the Bank engaged in this fraudulent activity in the past or that it threatened to do so in the future. At best, the Bank appears as an "isolated offender," Sedima, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14, engaged in a "one-shot" effort to inflict a single injury. Marks, 811 F.2d at 1112. This conduct fails to establish a "pattern of racketeering activity." The judgment of the district court is therefore
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 The plaintiffs also allege various state claims which were dismissed along with their RICO claim. We need not address these
 
 
 [2]
 Since we are reviewing a motion to dismiss, we treat as true the facts alleged in plaintiff's complaint. Morgan v. Bank of Waukegan, 804 F.2d 970, 973 (7th Cir.1986)
 
 
 [3]
 The district court also dismissed the defendants' RICO counterclaim. Although this claim is also before us on cross-appeal, we need not address it because of our disposition of the appeal
 
 
 [4]
 See, e.g., Medical Emergency Service Associates v. Foulke, 844 F.2d 391 (7th Cir.1988); Liquid Air Corp. v. Rogers, 834 F.2d 1297 (7th Cir.1987); Appley v. West, 832 F.2d 1021 (7th Cir.1987); Tellis v. U.S. Fidelity & Guar. Co., 826 F.2d 477 (7th Cir.1986); Marshall & Ilsley Trust Co. v. Pate, 819 F.2d 806 (7th Cir.1987); Skycom Corp. v. Telstar Corp., 813 F.2d 810 (7th Cir.1987); Marks v. Pannell Kerr Forster, 811 F.2d 1108 (7th Cir.1987); Elliott v. Chicago Motor Club Ins., 809 F.2d 347 (7th Cir.1986); Morgan v. Bank of Waukegan, 804 F.2d 970 (7th Cir.1986); and Lipin Enterprises, Inc. v. Lee, 803 F.2d 322 (7th Cir.1986)
 
 
 [5]
 Most of these predicate acts (107 or 108) involve mail fraud resulting from the Bank's unsecured loans to the plaintiffs
 
 
 [6]
 Although not dispositive of our decision in Appley, it is worth noting that Mr. West, the defendant had already been convicted of mail fraud and sentenced to 5 years imprisonment and restitution in the amount of $957,000