**ORCHARD HILLS COOPERATIVE APARTMENTS, INC., et al.,**
Plaintiffs,

v.

**GERMANIA FEDERAL SAVINGS AND LOAN ASSOCIATION, et al.,**
Defendants.

No. 85–3569.

United States District Court,
C.D. Illinois,
Springfield Division.

Sept. 12, 1989.

Thomas J. Immel, Springfield, Ill., for plaintiffs.

Robert M. Lucy, Mark Deiermann, St. Louis, Mo., Paul Bown, Springfield, Ill., Clark J. Potter, Jr., Louisville, Ky., Terry H. Gamber, Mt. Vernon, Ill., for defendants.

## OPINION

RICHARD MILLS, District Judge:

Another chapter in the unremitting saga of RICO.

This cause is before the Court on the Germania Defendants' (Germania Federal Savings & Loan Association, David Kilduff, and David Stelbrink) renewed motion to dismiss Plaintiffs' civil RICO claims (Counts IV, V, VI) in light of recent Seventh Circuit cases which flesh out the "pattern of racketeering" requirement of RICO. 18 U.S.C. § 1962(a).

Further, Defendants challenge the constitutionality of RICO on void for vagueness grounds.

## I—Facts

The facts as pled in the complaint—and assumed to be true for purposes of this motion—are somewhat lengthy, but important to the resolution of the motion. Plaintiffs are Orchard Hills Cooperative Apartments, Inc. (Orchard) and its President, James E. Berger. The Defendants include Germania Federal Savings and Loan Association (Germania), whose principal place of business is Alton, Illinois, with offices in Springfield, Illinois. Defendant Stelbrink (at all relevant times) was Vice–President of Germania. Defendant Kilduff (at all relevant times) was Germania's principal officer responsible for the management affairs of Orchard. Defendant Michel–Potter Properties is an Illinois general partnership whose principals are Defendants Michel and Potter.

In 1973, real estate developer Frank Brewster constructed a 136–unit apartment complex in Springfield, Illinois, originally called "Georgetown Colony Apartments." In 1973 or 1974, Germania, which had provided the financing for Brewster, foreclosed on the property—thereby becoming the beneficial and equitable owner thereof. Germania then formed Orchard Hills Cooperative Apartments, Inc., as a not for profit corporation, placed title to the foreclosed property in the name of Orchard, and renamed the complex "Orchard Hills Apartments."

In September of 1977, Orchard gave Germania a first mortgage on the complex. At the same time, Germania contracted with Orchard to act as Orchard's agent (for a management fee) to care for the property—collect rent, prevent waste, manage the financial, legal, and day-to-day affairs, and most importantly to find a purchaser for the property. Pursuant to this agreement, Germania, through its agents Kilduff and Stelbrink, identified Michel as a prospective purchaser. Kilduff and Stelbrink then negotiated the material terms of the proposed sale with Michel and, in November 1980, presented the proposed sale to Orchard's Board of Directors.

Orchard asserts that Germania represented the true value of the property to be

$2.95 million and threatened to foreclose on Orchard if the complex was not sold for that price. Unbeknownst to Orchard, however, Germania also contracted with Michel and Potter (as Michel–Potter Properties), whereby Michel–Potter would purchase the complex from Orchard, then sell it to third party investors for whom Germania would finance the purchase. The investors would then sell the condos to individual buyers (which sale Germania also would finance).

The upshot of the transaction was this: Michel–Potter bought Orchard for $2.95 million and then, on the same day, sold it to a group of investors for $4.4 million—thereby making a healthy profit. Meanwhile, Germania substituted a $2.7 million mortgage at 8.75% for a $4.4 million mortgage at 14.5%. (Orchard knew nothing of Michel–Potter's subsequent sale until September of 1984—nearly four years later.)

In support of their RICO claims, Plaintiffs assert that Defendants committed numerous acts of mail and wire fraud, that they were involved in a scheme to defraud Plaintiffs, and that the "continuous association of Defendants in the enterprise while committing the unlawful acts ... constitutes a pattern of activity."

## II—Motion to Dismiss

In ruling on a motion to dismiss, the Court "must accept the well pleaded allegations of the complaint as true. In addition, the Court must view these allegations in the light most favorable to plaintiff." *Gomez v. Illinois State Board of Education*, 811 F.2d 1030, 1039 (7th Cir.1987). The applicable rules do not necessitate a detailed outline of the claim's basis. *Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). Still, a "complaint must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985). Applying the above standards, the Court now turns to the case at bar.

## III—Civil RICO

Plaintiffs bring this action pursuant to 18 U.S.C. § 1962(a). *See* 18 U.S.C. § 1964(c) (providing for civil cause of action by "any person injured" by a section 1962 violation). The existence of a pattern of racketeering activity is an essential element of a section 1962 claim. *Tellis v. United States Fidelity & Guaranty Co.*, 826 F.2d 477, 478 (7th Cir.1986). The act provides that a pattern of racketeering activity "requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5). The Seventh Circuit has decided numerous cases in recent years which attempt to give meaning and scope to the pattern requirement. *See, e.g., SK Hand Tool Corp. v. Dresser Industries, Inc.*, 852 F.2d 936 (7th Cir.1988); *Jones v. Lampe*, 845 F.2d 755 (7th Cir.1988); *Medical Emergency Service Associates v. Foulke*, 844 F.2d 391 (7th Cir.1988); *Liquid Air Corp. v. Rogers*, 834 F.2d 1297 (7th Cir.1987); *Appley v. West*, 832 F.2d 1021 (7th Cir.1987); *Marshall & Ilsley Trust Co. v. Pate*, 819 F.2d 806 (7th Cir.1987); *Skycom Corp. v. Telstar Corp.*, 813 F.2d 810 (7th Cir.1987); *Marks v. Pannell Kerr Forster*, 811 F.2d 1108 (7th Cir. 1987); *Tellis v. United States Fidelity & Guaranty Co.*, 826 F.2d 477 (7th Cir.1986); *Elliott v. Chicago Motor Club Insurance*, 809 F.2d 347 (7th Cir.1986); *Morgan v. Bank of Waukegan*, 804 F.2d 970 (7th Cir. 1986); *Lipin Enterprises, Inc. v. Lee*, 803 F.2d 322 (7th Cir.1986).

The circuit court has held that whether a pattern exists is a fact-specific question involving many relevant factors including: (1) the number and variety of predicate acts and the length of time over which they were committed; (2) the number of victims; (3) the presence of separate schemes; and (4) the occurrence of distinct injuries. *Jones*, 845 F.2d at 757. Although none of these factors, standing alone, is controlling, they provide the framework through which we must determine whether the requisite "continuity plus relationship" exists. *Id.; see Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985). We are further guided by the principle that, although the Court in *Sedima* expansively construed the

general civil RICO provisions, it defined the pattern requirement narrowly. *Jones,* 845 F.2d at 756. Also, we review this cause against the backdrop of the Seventh Circuit's observation that: "Our cases demonstrate an expansive reading of civil RICO, but only where a true 'pattern' of prohibited activity, not just sporadic or isolated instances of fraud, are shown." *Id.* at 757.

Finally, we are guided by the Supreme Court's recent decision in *H.J. Inc. v. Northwestern Bell Telephone Co.,* — U.S. ——, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). In that case, the Court addressed RICO's pattern requirement, rejecting the idea "that predicate acts of racketeering may form a pattern only when they are part of separate illegal schemes. Nor can we agree with those courts that have suggested that a pattern is established merely by proving two predicate acts...." *Id.* 109 S.Ct. at 2899. In attempting to find a middle ground, the Court found that "a plaintiff or prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *Id.* at 2900 (emphasis in original). This, of course, is no more than what we were told in the famous footnote 14 of *Sedima* that there must be "continuity plus relationship" among the various acts of racketeering to constitute a pattern. *Sedima,* 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14. Trying to flesh out this concept, however, the Court in *H.J. Inc.* attempted to define the concepts of continuity and relationship which have divided the circuit courts since *Sedima.*

The Court defined the relationship prong as follows: " 'criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.' " *H.J. Inc.,* 109 S.Ct. at 2901–02 (quoting 18 U.S.C. § 3575(e)). In describing continuity the Court stated:

What a plaintiff or prosecutor must prove is continuity of racketeering activity, or its threat, *simpliciter.* ... "Conti-

nuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.... A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long term criminal conduct.

The gist of the Court's opinion was that it struck down the Eighth Circuit's rule that a single fraudulent effort or scheme is insufficient to establish a pattern of racketeering activity. However, as Justice Scalia stated in his concurrence, the Court's striking of the Eighth Circuit rule is "the Court's only substantive contribution to our prior guidance." *Id.* at 2908 (Scalia, J., concurring). Thus, *H.J. Inc.* does little, if anything, to change the Seventh Circuit precedent upon which we rely to adjudicate the instant motion.

We now move to the merits of the motion. In an order entered February 5, 1987, this Court found:

Plaintiffs have alleged that the Defendants committed several acts of mail and wire fraud over a period of several months in furtherance of a scheme to defraud them. In addition, Plaintiffs claim that the Defendants' overall scheme was directed toward other investors: a factor which tends to indicate the existence of a pattern. The acts of fraud are distinct; some relate to the initial agreement to sell the property, while others relate to the alleged duping of investors other than the Plaintiffs. As in *Morgan,* while these acts can be viewed as part of a single overall scheme, they were ongoing over a period of months in addition to being distinct acts. Therefore, Plaintiffs have met their burden of alleging both the continuity and relationship prongs of the pattern requirement.

Since the date of that order, several Seventh Circuit cases have clarified the phrase "pattern of racketeering activity." *Jones v. Lampe,* 845 F.2d 755 (7th Cir.1988); *SK Hand Tool Corp. v. Dresser Industries, Inc.,* 852 F.2d 936 (7th Cir.1988); *Ashland Oil, Inc. v. Arnett,* 875 F.2d 1271 (7th Cir.1989).

In *Jones,* plaintiffs owed money to Bartelso Savings Bank. The plaintiffs alleged that the bank induced them to apply for an SBA guaranteed loan intending to fraudulently misappropriate the money to offset the existing indebtedness. Meanwhile, the bank continued to make unsecured loans to the plaintiffs to "string them along" during the loan application process. The plaintiffs attained the loan and the bank misappropriated the money by applying it to the existing debt in violation of SBA restrictions and the terms of the loan agreement. The plaintiffs also alleged that defendants made false representations to SBA in an attempt to cover up the misappropriation of approximately $191,000. The complaint alleged that defendants committed 120 separate predicate acts, most involving mail fraud, to injure four victims: The Dan E. Jones Hardwood Lumber and Milling Company (DEJ), Dan and Judy Jones, and SBA.

The district court granted the defendant's motion to dismiss the complaint. Affirming the dismissal, the circuit court found that the facts as alleged by the plaintiffs showed only one general scheme (which took several months to complete), concerned one major transaction (the SBA loan), had four potential victims (the Joneses, DEJ, and SBA), caused one distinct injury (the wrongful conversion of the loan proceeds), and threatened no repeated harm. *Jones,* 845 F.2d at 758. The court concluded that these facts do not constitute a pattern under civil RICO.

In the instant case, the facts as alleged by Orchard show only one general scheme (which took several months to complete), concerned only one major transaction (the sale of the property substantially below its value), had one actual victim (the Orchard Hills Cooperative Apartments), caused one distinct injury (the sale of the property for approximately $1.5 million below its actual market value), and threatened no repeated harm.

Similarly, in *SK Hand Tool,* the plaintiff alleged that the defendant engaged in multiple acts of mail and wire fraud to misrepresent the value of a division of Dresser Industries. Plaintiff purchased the division of Dresser for what it alleged to be an excessive price. The circuit court affirmed the dismissal of the RICO count on the grounds that defendant's actions resulted in only one transaction which caused one harm to one victim. *SK Hand Tool,* 852 F.2d at 940. That case is thus the mirror image to the case before us. Orchard has only alleged multiple predicate acts which resulted in one transaction causing a single harm to a single victim.

In *Ashland Oil, Inc. v. Arnett,* 875 F.2d 1271 (7th Cir.1989), plaintiffs, four oil suppliers, alleged that defendants orchestrated two separate fraudulent schemes. The first involved the use of false financial statements by defendants to obtain lines of credit from three of the plaintiffs. The second scheme involved multiple acts of mail and wire fraud, bankruptcy fraud, and arson. The gist of the scheme was to take fuel from plaintiffs' automatic terminals rapidly enough to obtain huge amounts before plaintiffs' automatic billing mechanisms could terminate defendants' credit. The court affirmed a jury verdict for plaintiffs. The circuit court stated that defendants' actions harmed four different victims in the same manner, and the injuries were inflicted through a variety of independent sequential actions. Thus, *Ashland Oil* is clearly distinguishable from the instant case. Orchard has alleged only a single transaction which caused a single harm to a single victim.

The Seventh Circuit's most recent decision construing the "pattern of racketeering activity" requirement is *Management Computer Services, Inc. v. Hawkins, Ash, Baptie & Co.,* 883 F.2d 48 (7th Cir.1989). In this case, the plaintiff, a computer software designer, alleged defendant copied and used certain software without authorization. The court affirmed a summary

judgment for defendant on the RICO count finding that the case was "essentially a contract dispute involving one 'victim,' one transaction between the parties, and, at most two predicate acts—the alleged unauthorized copying of the contract programs and the ... backup tapes." The case before us is essentially similar in that it involves one victim and one transaction.

### IV. Constitutionality of RICO

Apart from the language construing RICO's pattern requirement, Justice Scalia's concurrence in *H.J. Inc.* is significant for the following statement:

No constitutional challenge to this law has been raised in the present case, and so that issue is not before us. That the highest Court in the land has been unable to derive from this statute anything more than today's meager guidance bodes ill for the day when that challenge is presented.

In consideration of the Court's holding and this language (some might say "invitation") from Justice Scalia, this Court ordered Defendants to brief the Court on any issues raised by *H.J. Inc.*, including those of constitutional dimension, which bore on the instant motion. That order resulted in Defendants' challenge to RICO on constitutional grounds.[1] However, our disposition of the Defendant's motion to dismiss makes it unnecessary for us to reach the constitutional issue.

### V. Conclusion

Our resolution of Defendants' motion to dismiss the RICO counts of the complaint (Counts IV, V, and VI) leaves only three pendent state claims remaining. This Court generally will not exercise jurisdiction over pendent state law claims when all federal claims are dismissed prior to trial. Plaintiffs are free to pursue these claims in state court.

*Ergo*, in light of recent Seventh Circuit decisions further defining RICO's "pattern of racketeering activity" requirement, Defendants' motion to dismiss Counts IV, V,

and VI of Plaintiffs' first amended complaint is ALLOWED with prejudice. The remaining state law claims are DISMISSED without prejudice.

Case CLOSED.

---

1. By order entered July 20, 1989, the Court informed the Attorney General of the constitutional attack. *See* 28 U.S.C. § 2403. In a response filed July 25, 1989, the Government declined to intervene in this cause.