**Ron HUTCHINSON, Margie Crocker, and Robert Callahan, on behalf of themselves and all others similarly situated**

v.

**WICKES COMPANIES, INC. and Simmons U.S.A. Employees' Retirement Plan.**

No. 1:88–cv–2447–RCF.

United States District Court, N.D. Georgia, Atlanta Division.

Nov. 30, 1989.

---

1316

Kenneth S. Canfield, Office of Kenneth S. Canfield, Atlanta, Ga., Ralph Irving Knowles, Jr., Drake Knowles & Pierce, Junius Foy Guin, III, Tanner Guin Ely Lary & Neiswender and Norman Philip Stein, Office of Norman Stein, Tuscaloosa, Ala., for plaintiffs.

Charles K. Howard, Jr., Thomas A. Pogue, Mark David Halverson, Richard Read Gignilliat and Donald R. Stacy, Elarbee Thompson & Trapnell, Atlanta, Ga., and Jay Adams Knight, McKenna Conner & Cuneo, Los Angeles, Cal., for defendants.

## ORDER

RICHARD C. FREEMAN, District Judge.

This action is before the court on plaintiffs' motions to amend the complaint.

## BACKGROUND

This is an action brought under the Employee Retirement Income Security Act [ERISA], 29 U.S.C. § 1001 *et seq.*, by participants of a pension plan. Plaintiffs seek to recover approximately $25,000,000 that remained in the plan when the plan was terminated. Plaintiffs were employees of the Simmons Company. In 1985 the defendant Wickes purchased the defendant retirement plan, Simmons U.S.A. Employees' Retirement Plan [the Plan]. Plaintiffs allege that defendant Wickes terminated the Plan, paid the plan participants their accrued benefits, and retained the excess assets, referred to in the complaint as the "common surplus." Plaintiffs contend they are entitled to receive the common surplus, interest on that common surplus, and the profits derived from the use of that common surplus. Plaintiffs set forth alternative theories of recovery—one of which involves "restoring" the Plan and having plaintiffs paid out of the Plan, the other of

which involves plaintiffs being paid directly by defendant Wickes.

## MOTIONS TO AMEND

Plaintiffs have filed a motion to amend the complaint and a motion to further amend the complaint. Defendants oppose both motions. The issues have been briefed exhaustively. Plaintiffs seek to add three counts to the complaint. Proposed Counts V and VI would add two claims against Wickes under the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* [RICO]. Proposed Count VII arises under ERISA and seeks early retirement benefits for those plaintiffs who did not meet the requirements for these benefits when the Plan was terminated.

Under Fed.R.Civ.P. 15, leave to amend "shall be freely given when justice so requires." Generally, when determining whether to permit amendment the court must consider such factors as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

### A. RICO

Defendants oppose plaintiffs' proposed RICO claims because defendants contend the allegations fail to state claims and thus are futile.[1] Because defendants have raised the argument that the allegations are insufficient as a matter of law, the court must make what is in effect a Rule 12(b)(6) determination. 3 J. Moore, Moore's Federal Practice ¶ 15.08[4] (2d ed. 1989). Failure to state a claim is a sufficient reason to deny leave to amend. *Halliburton*

*& Associates, Inc. v. Henderson, Few & Co.,* 774 F.2d 441, 444 (11th Cir.1985).

The standard the court must use in ruling on a motion to dismiss for failure to state a claim is well-established. In evaluating the sufficiency of plaintiffs' complaint under Rule 12(b)(6), the court must accept the facts as pleaded and construe them in the light most favorable to plaintiffs. *Parr v. Woodmen of World Life Insurance Co.,* 791 F.2d 888, 889–90 (11th Cir.1986). Such motions "should be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims." *Bracewell v. Nicholson Air Services, Inc.,* 680 F.2d 103, 104 (11th Cir.1982).

In proposed Count V, plaintiffs claim defendant Wickes violated 18 U.S.C. § 1962(c). A violation of section 1962(c) has four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). In proposed Count VI, plaintiffs claim defendant Wickes violated 18 U.S.C. § 1962(a), which bars the use or investment of racketeering monies in any activities that affect interstate or foreign commerce. The monies in question must be derived from a *pattern* of racketeering activity.

Defendants initially contend plaintiffs have failed to allege the existence of an "enterprise." An enterprise is defined in 18 U.S.C. § 1961(4) to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." Plaintiffs allege that the enterprise is Wickes and the various entities and individuals who served as fiduciaries of the Plan from its inception in the 1940s until its termination in 1988.[2]

---

1. Defendants concede that none of the following considerations bears on the instant motions to amend: delay, bad faith, dilatory motive, repeated failure to cure deficiencies, and undue prejudice.

2. Paragraph 73 of the amended complaint states:

Wickes, the Plan, the Pension Committee created under the Plan and the persons serving thereon from time to time, Simmons, Simmons U.S.A. Corporation, GW, The Continental Illinois National Bank and Trust Company, as trustee for the Plan, its predecessor trustees, and the officers, directors, and employees of such entities who from time to time were fiduciaries with respect to the Plan constitute

The court is persuaded that plaintiffs have adequately pleaded an enterprise for purposes of withstanding a motion to dismiss.

■ Defendants next challenge plaintiffs' allegations that Wickes engaged in a pattern of racketeering activity. Any RICO claim requires, as evidence of a pattern, at least two predicate acts within a ten-year period that are indictable under state or federal laws. 18 U.S.C. §§ 1961(1), (5). Plaintiffs allege three predicate acts: 1) mail fraud under 18 U.S.C. § 1341;[3] 2) securities fraud;[4] and 3) conversion from a pension plan under 18 U.S.C. § 664. Defendants do not contest, for the purposes of this motion only, that conversion of pension plan proceeds is a predicate act.

Plaintiffs allege two types of mail fraud by Wickes.[5] First, plaintiffs allege that from 1985 to 1988 Wickes sent out summary plan descriptions that were lulling and misleading in that they did not disclose to the Plan participants that Wickes intended for the plan surplus to revert to Wickes. Second, plaintiffs allege that correspondence from Wickes to Plan participants, their attorneys, and governmental agencies in 1987 and 1988 was fraudulent. Plaintiffs contend Wickes had a duty to inquire as to prior violations of fiduciary duty by its predecessor Plan administrators and correct those breaches of fiduciary duty. Plaintiffs claim that by failing to do so, Wickes aided and abetted securities fraud. Finally, plaintiffs allege that Wickes converted the common surplus of the Plan.

The court finds that plaintiffs have alleged only one scheme of "racketeering." The purpose and plan of that scheme was to terminate the Plan and retain the common surplus. The Supreme Court has held that, in some circumstances, one scheme can be sufficient to establish a pattern of racketeering activity. *H.J., Inc. v. Northwestern Bell Telephone Co.*, — U.S. —, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).[6] The issue thus becomes whether Wickes' alleged scheme to terminate the Plan and recoup the surplus is sufficient to establish a pattern of racketeering activity.

While at least two predicate acts are required to find a pattern, two predicate acts may not be sufficient in and of themselves to establish a pattern. *Sedima*, 473

an "enterprise" within the meaning of 18 U.S.C. § 1961(4).

**3.** A violation of 18 U.S.C. § 1341 has two elements: intentional participation in a scheme to defraud someone of money or property and use of the mails in furtherance of the scheme. *United States v. Simon*, 839 F.2d 1461, 1465 (11th Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 2883, 101 L.Ed.2d 917 (1988). To state a claim for mail fraud, it is not necessary to show reliance.

**4.** Plaintiffs allege defendants violated section 12(2) of the Securities Act of 1933 [1933 Act], Rule 10b–5 of the Securities and Exchange Commission, and section 10(b) of the Securities Exchange Act of 1934 [1934 Act]. Under section 12(2) of the 1933 Act, anyone who sells or offers a security by use of mails and includes an untrue statement of material fact or omits to state a necessary material fact is liable. 15 U.S.C. § 77*l*(2). Under section 10(b) of the 1934 Act and Rule 10b–5, it is a violation of federal law to sell or offer a security by means of an untrue statement of material fact or omission of material fact. 15 U.S.C. § 78j.

Plaintiffs contend that their interests in the Plan constitute "securities" under the 1933 Act and the 1934 Act. Plaintiffs allege that each separate payment into the Plan was a "sale" and therefore a separate violation. It appears to be a question of first impression in the Eleventh Circuit whether an interest in a voluntary, contributory retirement plan is a security. The court does not need to reach that issue.

**5.** Plaintiffs initially allege that the *enterprise* issued false and misleading summary plan descriptions in violation of 18 U.S.C. § 1341. Plaintiffs state that the summary plan descriptions failed to disclose that Plan surplus would revert to the employer and affirmatively represented that under no circumstances would Plan assets revert to the employer. Any mail fraud committed by the enterprise, however, cannot be the basis of RICO liability for Wickes. *See United States v. Peacock*, 654 F.2d 339 (5th Cir. 1981), *vacated in part*, 686 F.2d 356 (5th Cir. 1982) (on other grounds), *cert. denied*, 464 U.S. 965, 104 S.Ct. 404, 78 L.Ed.2d 344 (1983).

**6.** In *H.J., Inc.*, the Supreme Court resolved a dispute between the lower courts as to whether "multiple schemes" are necessary to show a pattern under RICO. In 1986, the Eleventh Circuit had rejected the "multiple schemes" test and held that "[a]cts that are part of the same scheme or transaction can qualify as distinct predicate acts." *Bank of America National Trust & Savings Assn. v. Touche Ross & Co.*, 782 F.2d 966 (11th Cir.1986). Thus, the Supreme Court's ruling in *H.J., Inc.* effectively affirmed the Eleventh Circuit's ruling in *Touche Ross*.

U.S. at 496, n. 14, 105 S.Ct. at 3285, n. 14. In *H.J., Inc.*, the Supreme Court, citing the legislative history of RICO, determined that "to prove a pattern of racketeering activity a plaintiff or prosecutor must show [1] that the racketeering predicates are related, *and* [2] that they amount to or pose a threat of continued criminal activity." *H.J., Inc.*, 109 S.Ct. at 2900 (emphasis supplied). These requirements are sometimes referred to as "continuity plus relationship."

1. Relationship Between the Predicate Acts

To determine whether predicate acts are related, the Supreme Court recommends "taking guidance from" Title X of the Organized Crime Control Act of 1970, 18 U.S.C. § 3575 *et seq.* (now partially repealed). *Id.* Under Title X criminal defendants who engage in a pattern of criminal activity are subject to enhanced sentences. Title X defined a pattern in terms of a relationship, as follows: "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." 18 U.S.C. § 3575(e), *quoted in Sedima*, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14. There is no question that in this action the alleged predicate acts are related. All of the alleged predicate acts—mail fraud, securities fraud, and conversion—were in furtherance of Wickes' decision to terminate the Plan and retain the common surplus; additionally, the "participants" and "victims" of the predicate acts were the same.

2. Continuity

The court next must determine whether the alleged predicate acts "themselves amount to, or that they otherwise constitute a threat of continuing racketeering activity." Neither *Touche Ross* nor *H.J., Inc.* dictate that one scheme is always sufficient to show a pattern. Indeed, it appears that one scheme is often insufficient proof of continuity.

■ Although the Supreme Court in *H.J., Inc.* expressly noted that it is "difficult to formulate in the abstract any general test for continuity," 109 S.Ct. at 2901, the Court did elaborate on the continuity requirement:

"Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.... A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement.

*Id.* at 2902. Thus, the continuity requirement can be satisfied either by showing past conduct that by its nature shows a threat of future racketeering or by showing repeated racketeering acts over a substantial period of time.

a. *Threat of Continued Activity*

■ The one scheme in this action, to terminate the Plan and retain the common surplus, does not by its nature show a threat of future criminal conduct. The scheme was closed-ended. Plaintiffs allege that Wickes devised the scheme "for the purpose of taking for itself funds contributed by and held in trust for the participants of the Plan." Amendment ¶ 76. Accepting plaintiffs' allegations as true, it is uncontroverted that the purpose of the scheme was achieved and the scheme is completed. The court finds that plaintiffs have not alleged any additional facts that suggest a threat of continuity. Plaintiffs have not alleged that Wickes makes a practice of acquiring companies and terminating those companies' retirement plans. Plaintiffs have not alleged any manner in which Wickes could inflict any future injury on plaintiffs.[7]

---

7. Additionally, it is clear from the allegations that Wickes believed its decision to terminate

the Plan was legal under ERISA. Wickes openly purchased the Plan, decided to terminate the

### b. Continued Criminal Activity

■ Just as the court finds that the continuity requirement is not satisfied by a threat of future criminal activity, the court finds that the continuity requirement is not satisfied by allegations of repeated predicate acts over a substantial period of time. Plaintiffs argue that the predicate acts occurred over a forty-year period. The court disagrees. In the Eleventh Circuit, predicate acts must be conducted by the defendant, and not by some other participant in the alleged enterprise, in order to show a pattern of racketeering activity. *United States v. Peacock,* 654 F.2d 339 (5th Cir. 1981), *vacated in part,* 686 F.2d 356 (5th Cir.1982) (on other grounds), *cert. denied,* 464 U.S. 965, 104 S.Ct. 404, 78 L.Ed.2d 344 (1983). To the extent the bulk of the alleged predicate acts involve activities of the "enterprise" rather than acts of Wickes, they are not probative of a pattern. Plaintiffs' attempt to characterize the scheme as one lasting more than forty years is disingenuous.

Wickes acquired Simmons USA and the Plan on September 12, 1985. On October 31, 1986 Wickes sold Simmons USA. Wickes did not sell the Plan. Upon the sale of Simmons USA, Wickes ceased to make benefit payments into the Plan, thereby effectively terminating the Plan. Two months later, on December 22, 1986, Wickes sent a Notice to Interested Parties advising them that the Plan was to be terminated. During the next year, Wickes proceeded with the termination of the Plan by filing the necessary forms with the Pension Benefit Guaranty corporation and the Internal Revenue Service. In January 1988 or shortly thereafter, each participant in the Plan was paid his or her calculated share in the Plan and Wickes retained the amount remaining in the Plan.

Although predicate acts over a substantial period of time *may* demonstrate continuity in some cases, the court does not believe this to be such a case. Accepting plaintiffs' allegations as true, the predicate acts in this action spanned from September 1985 to January 1988. This time span—just over two years—is far less than the forty-year period plaintiffs argue in their briefs. The court questions whether two years in a "substantial period of time" under *H.J., Inc.* Nonetheless, the court finds the particular acts alleged during that time period are not sufficient to demonstrate continuity.

The allegations in plaintiffs' complaint—even if proved—do not demonstrate continued or threatened criminal activity. This action is clearly distinguishable from *H.J., Inc.* In *H.J., Inc.,* the respondent telephone company had, over the course of a six-year period, paid bribes to five utilities commissioners in an effort to obtain unfair and unreasonable rate hikes. The Supreme Court held that the lower courts had erred in dismissing the petitioner telephone customers' RICO claim. The alleged criminal activity in *H.J., Inc.*—bribing public officials—was capable of repetition and thus created a genuine threat of future racketeering activity against the same victims. Additionally, the predicate acts occurred over a substantial period of time. In short, the scheme was both open-ended and extended over a substantial period of time.

The facts in this action are also distinguishable from those in *Touche Ross,* the Eleventh Circuit case allowing proof of one scheme to satisfy the pattern requirement. 782 F.2d 966 (11th Cir.1986). In *Touche Ross,* the plaintiff banks alleged the defendant accounting firm and accountants performed nine separate predicate acts of mail fraud and wire fraud pursuant to defen-

---

Plan, and notified both plaintiffs and governmental agencies of its intent. Unlike in most RICO actions, the legality of the underlying predicate acts is going to be vigorously contested in this action. It appears to the court that Wickes *does not present any threat of similar racketeering activity in the future* because this action will ultimately determine the legality of Wickes' conduct. If Wickes' conduct is found to be legal, the possibility of similar conduct in the future is not a threat of future racketeering activity. If Wickes' conduct is found to be illegal, it would be unlikely that Wickes would undertake similar conduct in the future. The intent of Congress in RICO is to deter *"long-term criminal conduct."* *H.J., Inc.* 109 S.Ct. at 2902 (emphasis added). The facts of this case—a legitimate corporation effecting one decision it believes to be legal—does not create the type of situation Congress intended RICO to regulate.

dants' scheme to induce the banks to extend credit to a particular corporation. The Eleventh Circuit held that those allegations stated a claim under RICO. Unlike here, the plaintiffs in *Touche Ross* suffered *repeated* economic injuries over the three-year period of the scheme.

In *Jones v. Lampe*, 845 F.2d 755 (7th Cir.1988), the Seventh Circuit addressed facts similar to those before this court. In *Jones*, the plaintiffs owed money to the defendant bank. The bank, believing plaintiffs were going to default on their loans, induced plaintiffs to apply for a Small Business Administration [SBA] loan. When the SBA loan came through, the bank misappropriated the funds and used them to pay off plaintiffs' indebtedness to the bank. The Seventh Circuit determined that plaintiffs had not adequately alleged a RICO pattern despite more than 120 alleged predicate acts. The Seventh Circuit found "only one general scheme (which took several months to complete), concerned one major transaction (the SBA loan), had four potential victims ([the plaintiffs]), one distinct injury (wrongful conversion of the loan proceeds) and threatened no repeated harm." *Id.* at 758. The court characterized the conversion of the SBA loan as a "single transaction occurring at a single point in time." *Id.* at 759. The court concluded:

> There were no allegations that the Bank engaged in any fraudulent activity in the past or that it threatened to do so in the future. At best, the Bank appears as an "isolated offender," *Sedima*, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14, engaged in a "one-shot" effort to inflict a single injury.

*Id.*

In conclusion, plaintiffs' RICO claims would not withstand a motion to dismiss by defendants because plaintiffs have failed to allege the existence of a pattern under RICO. The Supreme Court has held that proof of continued or threatened criminal activity is required to show a pattern. Plaintiffs have failed to allege facts showing such continuity. Accordingly, the court will not permit plaintiffs to add the two RICO claims.

### B. ERISA

■ In proposed Count VII, plaintiffs claim defendants violated section 204(g)(2) of ERISA. 29 U.S.C. § 1054(g)(2). Plaintiffs claim that a subclass of the plaintiff class, defined as those persons who, at the time of the Plan's termination, were not yet 55 years old and had not yet attained ten years service under the Plan, are entitled to receive early retirement benefits.[8] Plaintiffs ask for a declaratory judgment that "the subsidized early retirement is due them, that a sufficient portion of the common surplus ought to be paid in to the Plan to pay such benefits and that the annuities paid to the class members pursuant to the Plan termination should be supplemented to provide subsidized early retirement benefits." Amended Complaint ¶ 19F. In response, defendants contend plaintiffs have failed to exhaust administrative remedies.

The court will permit the amendment. Plaintiffs argue, and the court agrees, that resort to administrative remedies in this action would be futile because the Plan no longer exists. It would be impossible for the Plan to pay the thousands of dollars sought by the plaintiffs without the intervention of this court directing Wickes to restore the common surplus to the Plan.

### MOTION FOR PARTIAL SUMMARY JUDGMENT

■ Plaintiffs seek partial summary judgment on one narrow issue: defendants' affirmative defense that plaintiffs' ERISA claims are barred because of failure to exhaust administrative remedies. Defendants oppose the motion for partial summary judgment on the ground that the motion improperly asks for a determination on the merits prior to class certification. Because

---

**8.** The subclass, estimated to exceed 800 people, is defined as:

all persons who were participants (or their spouses) in the Plan when the Plan was terminated, who were employees of Simmons U.S.A. Corporation at the time of the Plan's termination and who had not at the time of the Plan's termination attained both ten years service under the Plan and age 55.

Amended Complaint ¶ 19A.

the court has had to reach the exhaustion issue in ruling on plaintiffs' motion to amend the complaint, the court sees no reason to delay ruling on plaintiffs' motion for partial summary judgment.

■ The court disagrees with defendants' argument that class certification is necessary prior to ruling on the motion. Generally, class certification is required prior to any determination *on the merits. See Peritz v. Liberty Loan Corp.,* 523 F.2d 349, 353 (7th Cir.1975). A dismissal for failure to exhaust administrative remedies, however, is not a determination on the merits. Instead, exhaustion of remedies is a jurisdictional defense that, if meritorious, results in an action being dismissed without prejudice prior to adjudication of the merits. *See, e.g., Amato v. Bernard,* 618 F.2d 559, 569 (9th Cir.1980) ("The court will still be open to Amato when he has exhausted his appeals before the Trust and if the decision of the Trustees is adverse to him.").

The court will grant plaintiffs' motion for partial summary judgment on defendants' exhaustion of remedies defense. As discussed above, the court has concluded that resort to administrative remedies in this action would be futile.

MOTION TO STRIKE JURY DEMAND

In the court's order of May 31, 1989, the court deferred ruling on defendants' motion to strike plaintiffs' demand for a jury trial. Plaintiffs are not entitled to a jury trial on their ERISA claims. Because the court will deny plaintiffs' motion to add RICO claims, plaintiffs are not entitled to a jury trial in this action.

Accordingly, plaintiffs' motion to amend the complaint is GRANTED in part and DENIED in part. Count VII of plaintiffs' proposed amendment shall be DEEMED FILED as of the entry of this order. Plaintiffs' motion to further amend complaint is DENIED. Defendants' motion to strike demand for jury trial is GRANTED. Plaintiffs' motion for partial summary judgment is GRANTED. Defendants' motion for oral argument is DENIED.

Defendants' motion for leave to file a further response is GRANTED. Defendants' Further Response, received in the Clerk's Office on August 31, 1989, shall be DEEMED FILED as of the entry of this order. Plaintiffs' "Motion for Leave to File Plaintiffs' Response to Defendants' Further Response" is GRANTED. Plaintiffs' Response to Defendants' Further Response, received in the Clerk's Office on September 25, 1989, shall be DEEMED FILED as of the entry of this order.

Discovery is extended for a period of four months from the entry of this order. Plaintiffs are DIRECTED to file a renewed motion for class certification within twenty (20) days of the entry of this order.

SO ORDERED.