United States Court of Appeals,

Fifth Circuit.

No. 95-31107.

Willie HALL, Plaintiff-Appellee,

v.

NATIONAL GYPSUM CO., as Plan Administrator of the Pension Plan
for Hourly-Paid Employees of the Gold Bond Products Division of
National Gypsum Co., Located in New Orleans, La., # 667, Defendant-
Appellant.

Feb. 6, 1997.

Appeal from the United States District Court for the Eastern
District of Louisiana.

Before REYNALDO G. GARZA, JOLLY and DeMOSS, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

In a case presenting an unusual factual context, the National
Gypsum Company appeals from a judgment ordering it, as the
administrator of a pension plan, to pay disability benefits to an
alleged plan participant and former employee, Willie Hall.[1] For the
reasons discussed below, we vacate the district court's judgment
and remand the case with instructions.

I.

Willie Hall served as an employee at a building-products
manufacturing plant in New Orleans from July 19, 1965 until
November 29, 1981, when he underwent a below-the-knee amputation of
his left leg due to complications from diabetes. When he began his
employment, the plant was owned and operated by National Gypsum,

---

[1]The benefits are now owing to Hall's wife, as Hall died
during the course of this litigation.

1

which established the Retirement Plan for Hourly-Paid Employees of the Gold Bond Products Division of National Gypsum ("the Plan"). The Plan included provisions for retirement pension benefits as well as disability pension benefits. Under the terms of the Plan, Hall's pension rights had vested as of March 10, 1981. On March 11, 1981, National Gypsum sold the plant to International Building Products, Inc. ("IBP").

National Gypsum assured its employees that those who continued to work at the plant were not considered terminated for purposes of the Plan. IBP did not have a plan of its own, so as part of the sale, National Gypsum apparently maintained control over the pension plan for the employees at the plant.[2] The collective bargaining agreement in place between IBP and Hall's union, Local No. 667 of the Laborers International Union, stated:

> For vesting purposes, under any pension plan adopted by International Building Products, Inc., employees formerly employed by National Gypsum Company who have not elected retirement under the National Gypsum Company pension plan shall be given credit for years of employment with National Gypsum Company. In addition, International Building Products, Inc. has arranged for its continuing employees to receive credit for vesting purposes under the National Gypsum Company pension plan for years of employment with International Building Products, Inc., provided however that the full responsibility for the payment of any benefits under any National Gypsum Company pension plan shall be solely that of National Gypsum Company.

The Plan provided for disability benefits to those who met the required term of service and "who shall have become, through some unavoidable cause, permanently incapacitated, and who shall at such

---

[2]The district court's resolution of this disputed fact is an issue of this appeal. *See* Part II.E of this opinion.

2

time be in the employ of the Company."

On September 28, 1982, Hall submitted a claim for disability benefits to IBP premised on his amputation. IBP referred the claim to National Gypsum which refused to pay on the claim because Hall's doctor had not declared Hall "totally and permanently disabled" as required by the language of the Plan. When Hall subsequently provided a statement from his doctor stating that he was in fact so disabled, National Gypsum again refused to pay, this time stating that his disability occurred after his termination as an employee of National Gypsum, thereby making him ineligible under the Plan. Correspondence between National Gypsum and Hall continued, but National Gypsum refused to pay Hall's disability benefits. When Hall contacted the company that coordinated the annuity payments made to recipients of Plan benefits, Canada Life Assurance, he was told that it exercised no control over who received benefits under the Plan. All of those decisions, Canada Life stated, were made by National Gypsum.

On October 28, 1990, National Gypsum filed for bankruptcy protection under Chapter 11 in the Bankruptcy Court for the Northern District of Texas. On March 9, 1993, that court confirmed a plan of reorganization that discharged all claims against National Gypsum arising prior to the confirmation or resulting from conduct occurring prior to the confirmation, excepting certain asbestos-related claims. The assets of the Plan were not included in National Gypsum's bankruptcy estate, but were apparently transferred to Morgan Guaranty Trust for credit to the account of

3

Canada Life Assurance Company, "in order to purchase annuities for all benefits accrued as of March 10, 1981." Hall did not file any claim with the bankruptcy court.

He did, however, sue National Gypsum, as the administrator of the Plan, in federal district court in New Orleans on May 7, 1993. His complaint alleged that his claim for disability benefits was wrongfully denied, thereby stating a cause of action under § 502(a)(1)(B) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B). He did not include the Plan as a party to the suit although ERISA does provide for this. As discussed below, however, a suit against the Plan would have been futile because the Plan's administrator, National Gypsum, claims the Plan no longer exists. National Gypsum claimed that suit was barred because of the running of the applicable period of prescription, because Hall failed to exhaust administrative remedies under the Plan, and because of the discharge it received in bankruptcy. It also stated that Hall was not entitled to benefits under the Plan because the Plan ceased to exist and because Hall did not qualify as an "employee" under the Plan.

The district court denied the parties' motions for summary judgment and set the case for a bench trial. The court and the parties then decided to forego a trial and the court decided the case based on "the briefs, stipulations, and depositions already received in the record." On January 31, 1995, the court ordered National Gypsum's "Pension Committee" to hold a hearing "to determine whether plaintiff is totally and permanently disabled and

4

eligible for benefits under the Plan." National Gypsum petitioned the court for clarification as to what it meant by "Pension Committee," but the motion was denied. National Gypsum never held any hearing on Hall's disability status and Hall moved for entry of final judgment and for attorney's fees and costs. The district court granted his motion, awarding disability pension payments to Hall in accordance with the terms of the Plan and awarding him attorney's fees and costs. National Gypsum appeals.

## II.

Our review of the district court's conclusions of law is plenary. We will uphold the district court's findings of fact so long as they are not clearly erroneous. This applies to findings based on oral as well as documentary evidence. Fed.R.Civ.P. 52(a). When, as is the case here, the evidence relied upon by the district court in making its findings consists solely of documents in the record, the burden of establishing clear error is not so great as where the court engaged in the judging of witness credibility or in some other way was in a superior vantage point for finding facts. *E.g., Cooper v. Department of the Navy,* 594 F.2d 484, 486 (5th Cir.), *cert. denied,* 444 U.S. 926, 100 S.Ct. 266, 62 L.Ed.2d 183 (1979). This does not, however, mean that our review is de novo, as National Gypsum suggests; the language of Rule 52(a) unmistakably sets forth the clear-error standard.

National Gypsum asserts that the district court erred in holding that its bankruptcy discharge did not bar Hall's claim, that the prescription period had not expired, and that Hall's claim

5

was not barred for failing to exhaust administrative remedies. Moreover, it claims that the district court erred in determining that Hall was an employee of National Gypsum for purposes of the Plan and that the district court erred in finding that the Plan did not terminate on March 10, 1981. We have engaged in a thorough review of the record and now address its contentions in turn.

A.

National Gypsum first contends that Hall should be barred from recovering any benefits in this suit because he failed to file a proof of claim in its bankruptcy proceeding. Bankruptcy Rule 3003(c)(2) provides as follows:

> Any creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim or interest within the time prescribed by subdivision (c)(3) of this rule; any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution.

The Code defines a "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). It defines a "claim" as a right to payment or to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, or undisputed. 11 U.S.C. § 101(5). Construing Hall's claim as one for payment of damages from National Gypsum, the claim would clearly be barred as he would satisfy the definition of a creditor. As such, Rule 3003 would have prevented him from

6

recovering out of the bankruptcy estate.

The order of the bankruptcy court specified that "the discharge herein provided operates as an injunction against the prosecution of the debtors ... of any Claim or Interest so discharged." In other words, all then-existing claims against National Gypsum that were not brought to the attention of the bankruptcy court in the form of a proof of claim were essentially extinguished upon the court's confirmation of the reorganization plan. This would include any claim against National Gypsum itself.

We cannot say, however, that this bars Hall's suit. His suit seeks to collect benefits to which he claims entitlement under the Plan. As National Gypsum admits, the Plan assets were not part of its estate in bankruptcy but were segregated from it. It stated that the Plan assets were given to Morgan Guaranty Trust and credited to the account of Canada Life Assurance for the payment of annuities to Plan beneficiaries. Moreover, Canada Life stated that it exercises no control over the assets. All determinations as to who receives benefits are made by National Gypsum. In requesting National Gypsum to order an annuity payment, Hall does not collide with the bankruptcy court's discharge order as money payments will not come from National Gypsum itself, but from the assets of the Plan. In fact, had Hall filed a claim in National Gypsum's bankruptcy proceeding, the trustee would surely have successfully argued that the assets of the bankruptcy estate were not subject to Hall's claim, since he was seeking collection from the assets of the Plan.

As we stated in *Matter of Edgeworth,* 993 F.2d 51, 53 (5th Cir.1993), a discharge in bankruptcy does not extinguish the debt itself, but merely releases the debtor from personal liability for the debt. We there noted that Bankruptcy Code Section 524(e) specifies that the debt still exists and can be collected from any other entity that might be liable. There, the debtor claimed that a creditor's claim against an insurance policy was barred because of its discharge in bankruptcy. We noted, however, that the crucial inquiry was whether the proceeds of the policy were part of the bankruptcy estate. Because we found they were not, the debtor's general discharge did not bar the creditor's suit for recovery *from the proceeds of the policy. Id.* at 55-56. Likewise here, Hall's claim is for assets from the Plan, assets not included in National Gypsum's bankruptcy estate. National Gypsum cannot raise the discharge as a defense to its obligation to pay Hall benefits he is owed from the Plan assets.

National Gypsum asserts in its reply brief that Hall cannot receive this relief because it claims his complaint did not request this relief. The complaint asked that National Gypsum, as plan administrator, pay the benefits. Even construing this as National Gypsum does and as the district court apparently did, we cannot agree with its conclusion that this bars Hall from receiving this relief. Federal Rule of Civil Procedure 8(f) requires that all pleadings be construed to do substantial justice. "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept

the principle that the purpose of a pleading is to facilitate a proper decision on the merits." *Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). The record evidence demonstrates that National Gypsum continued to make eligibility determinations long after it claims the Plan terminated; it is apparent that it is the entity which today controls the distribution of funds from the Plan's assets.

Given the confusion attendant to this unique factual situation, much of which only came to light during discovery, we find no defect in Hall's complaint that bars him from recovering from the assets of the Plan. We conclude that, in light of National Gypsum's position throughout this dispute with Hall that the Plan no longer exists, this suit against National Gypsum, as administrator of the Plan, is the equivalent of an action against the Plan itself and that Hall is therefore entitled to recover from the assets of the Plan in accordance with 29 U.S.C. § 1132(d). Accordingly, we vacate the district court's judgment ordering National Gypsum to pay Hall's benefits out of its own coffers and remand with instructions that National Gypsum, as administrator of the Plan, be ordered to provide benefits to Hall from the Plan's assets.

B.

National Gypsum asserts that the district court erred in determining that Hall's claim was not barred by prescription. The court ruled that the prescription period began to run on February 13, 1984, when Hall received notice that his request for benefits

9

was denied because he was not an active employee at the time of his disability. Applying Louisiana's ten-year prescriptive period, the court found Hall's May 7, 1993 suit to be timely.

ERISA does not set forth a statute of limitations to govern actions to clarify rights to benefits under 29 U.S.C. § 1132(a)(1)(B). We therefore look to the state statute of limitations most analogous to the claim being advanced. In *Kennedy v. Electricians Pension Plan, IBEW No. 995,* 954 F.2d 1116 (5th Cir.1992), we held that these claims are governed by Louisiana's ten-year prescription period, the period applied by the district court.

A cause of action under ERISA accrues when a request for benefits is denied. *E.g., Hogan v. Kraft Foods,* 969 F.2d 142, 145 (5th Cir.1992). National Gypsum asserts that the district court's finding that Hall's claim was conclusively denied on February 13, 1984 is clearly erroneous. It states that Hall's claim was denied at an earlier occasion, either on October 19, 1982 when Hall's application was returned to him or, at the latest, on February 24 1983 when Hall's attorney inquired into the reasons behind the administrator's decision. Hall argues that the return of his request in October 1982 did not give rise to a cause of action because the language of the letter did not suggest a conclusive denial of benefits. Hall contends that a conclusive denial did not occur until late in 1993 or early in 1994.

We find that this suit is timely. The October letter simply stated that, as Hall had not provided the requisite statement of

10

total and permanent disability, the request could not be considered. This does not amount to a denial, as proved by a subsequent letter on March 3, 1983 stating that if Hall provided this statement, National Gypsum would reconsider the request. Subsequent correspondence from National Gypsum suggested that Hall should be making its request to IBP rather than to National Gypsum. To clarify matters, Hall's attorneys wrote to National Gypsum informing it that Hall was now totally and permanently disabled and wanted his benefits. They also sought clarification, in the form of documentation, as to which company—National Gypsum or IBP—owed the disability benefits, since each claimed the other was on the hook.

On December 7, 1983, National Gypsum replied that Hall did have a vested benefit, but because Hall's disability occurred after his termination as an employee of National Gypsum he was not entitled to any benefits. The letter stated that this was due to a recent administrative decision from National Gypsum's corporate offices that "no disability benefits will be granted to former employees who were not disabled while employed" by National Gypsum. We find, contrary to the district court, that this letter constituted a conclusive denial of Hall's claim. It plainly and unmistakably denies Hall's claim and does not try to pass responsibility for Hall's claim to IBP nor does it dispute that Hall has otherwise made out a proper claim. Counting this event as the starting point for prescription purposes, however, does not

11

change the fact that Hall's May 7, 1993 suit was timely.[3]

### C.

National Gypsum claims that Hall's claim should be barred because, it states, Hall failed to exhaust available administrative remedies. The exhaustion doctrine is applicable to suits brought under ERISA. *Denton v. First Nat'l Bank of Waco,* 765 F.2d 1295 (5th Cir.1985) (citing *Amato v. Bernard,* 618 F.2d 559 (9th Cir.1980)). This requirement is not one specifically required by ERISA, but has been uniformly imposed by the courts in keeping with Congress' intent in enacting ERISA. In the seminal case on the issue of exhaustion, *Amato,* the court stated that the purposes of the exhaustion requirement included minimizing the number of frivolous ERISA suits, promoting the consistent treatment of benefit claims, providing a nonadversarial dispute resolution process, and decreasing the time and cost of claims settlement. *Amato,* 618 F.2d at 567. In *Denton,* we additionally noted that the requirement also serves to provide a clear record of administrative action if litigation should ensue, and to assure that judicial review is made under the arbitrary and capricious standard, not de novo. 765 F.2d at 1300. We stated this was necessary "to keep from turning every ERISA action, literally, into a federal case."

---

[3]The confusing factual context of this case makes it difficult to determine the precise date on which the prescriptive period began to run. This is so because of the absence of an available administrative appeals process at the time the claim was denied. In any event, the prescriptive period began no earlier than December 7, 1983—the date of the first definite denial—and consequently had not run at the time Hall filed suit. The district court, therefore, did not commit clear error in finding that the suit was not barred by prescription.

12

*Id.* We review the district court's decision to allow suit to proceed for abuse of discretion. *E.g., Curry v. Contract Fabricators Inc. Profit Sharing Plan,* 891 F.2d 842, 846 (11th Cir.1990).

The Summary Plan Description (SPD) provided for review of an adverse determination as follows:

> Upon receipt of denial of claim by you ... an appeal requesting further review may be submitted to the Benefits Coordinator within 60 days. You may review any pertinent documents held by the Company and you may submit issues and comments in writing. Upon receipt for review, the Benefits Coordinator will request a review by the Pension Committee which will render a decision by no later than 60 days following receipt of the request and such decision will be submitted to you ... in writing, setting forth all specific information on which such decision was based.

Hall does not claim that he formally followed this process to have his claim reviewed. National Gypsum claims that this failure bars the prosecution of this suit.

The district court found that the repeated letters and phone calls to National Gypsum were sufficient to trigger the appeals process, but that National Gypsum did not follow the appropriate procedures under the Plan for review of a denied claim. Hall requested, per the SPD, the documents upon which National Gypsum was relying for its determination, particularly the recent administrative order from its corporate offices. He was told, in response, that this "new" order was really an old policy, merely a confirmation of what had always been its policy. He was sent only what he already had: language from the Plan. The court noted that there was neither evidence that a hearing was held to determine Hall's eligibility for benefits nor that the Pension Committee

13

engaged in any form of review of the denial of his benefits. Accordingly, it sent the case back into the Plan apparatus and requested that the Pension Committee review the matter, a perfectly appropriate request. *See, e.g., Makar v. Health Care Corp. of the Mid-Atlantic,* 872 F.2d 80, 84 (4th Cir.1989) (failure to exhaust remedied by "remand" to the plan).

The reason no review was had in the first place was inadvertently provided by National Gypsum in a clarification motion it filed after the district court entered its order. National Gypsum asked the court what it meant by "Pension Committee," stating, *inter alia,* that this review body does not exist and, in fact, *has not existed since 1981,* long before Hall's dispute over benefits began. When the Plan did not act on the court's request to review its denial of Hall's claim, the court entered judgment in favor of Hall.

As we note above, the claim was in fact denied on December 7, 1983. Following the denial, Hall communicated with National Gypsum twice more to request the documents supporting its decision and to seek clarification of the decision to deny. His requests were unsuccessful. We believe, like the district court, that these attempts at nonlitigious resolution of the matter, combined with the elimination of the Plan's appeal body, National Gypsum's ever-changing story of why benefits could not be paid, and its failure to follow the appropriate procedures under the Plan result in Hall not being barred under the exhaustion requirement.

As Judge Tjoflat stated for the Eleventh Circuit, "there are

14

occasions when a court is obliged to exercise its jurisdiction and is guilty of an abuse of discretion if it does not, the most familiar examples perhaps being when resort to administrative remedies is futile or the remedy inadequate." *Curry,* 891 F.2d at 846 (quoting *Amato,* 618 F.2d at 568). The court noted in that case that none of the purposes served by the exhaustion requirement would be met by denying the applicant access to the courts. The same is true here. As other courts have recognized, when a plan's review apparatus has been abolished there is no need for a claimant to go through the formalities. *E.g., Hutchinson v. Wickes Cos.,* 726 F.Supp. 1315, 1321 (N.D.Ga.1989). We cannot say the district court's finding that Hall should not be barred under the exhaustion requirement was error.

D.

The next issue with which we are confronted is the district court's finding that Hall constituted an "employee" for purposes of the Plan, contrary to National Gypsum's contentions. The parties, below and on appeal, have spent a great deal of time debating whether it is the terms of the SPD or those of the Plan itself that control this definition, with the SPD containing the broader definition. We, like the district court, see no need to wade into the issue of when the terms of an SPD take precedence over those of the Plan, or vice versa, because even under the stricter definition National Gypsum's actions demonstrate that it considered Hall, and all other IBP employees who began work with National Gypsum, to be employees for purposes of the Plan.

15

The district court concluded that "the manner in which the defendant handled plaintiff's claim, as detailed below, and the obvious intent to continue the Plan for the IBP employees is conclusive evidence that plaintiff was considered an employee for purposes of the Plan." It apparently based its finding, at least in part, on statements made by a National Gypsum representative to IBP employees that those employees who transferred from National Gypsum to IBP were not considered terminated for purposes of the Plan. National Gypsum's Director of Employee Benefits confirmed this position in a memo in which he stated, "I feel you have expressed our position fully and nothing more should be said." We cannot say the district court's finding is clearly erroneous. Because the Plan denied Hall his benefits based upon an erroneous interpretation of who counted as an employee, its denial of benefits to Hall was error. Accordingly, we agree with the district court that the benefits must be paid.

E.

The court also found that the Plan did not terminate on March 10, 1981, as National Gypsum claims. National Gypsum claims this finding is clearly erroneous. It argues that the only evidence before the court on this issue supported a finding that the Plan was nonexistent. We disagree.

The court's memorandum in support of its order relied in part on the collective bargaining agreement in effect between IBP and Laborers Local 667. That agreement, as reprinted above in relevant part, indicated that the Plan was being continued, that National

16

Gypsum was responsible for it, and that former National Gypsum employees who continued service as employees of IBP would receive credit for vesting purposes under this Plan. Hall's rights under the Plan had already vested so this provision does nothing for him in that sense. This language does, however, support a finding that the Plan continued to exist. Moreover, ERISA contains detailed requirements that must be met before a Plan may be terminated. *See* 29 U.S.C. § 1341. For instance, the Pension Benefit Guaranty Corporation must be notified before a Plan can be terminated. 29 U.S.C. § 1341(a). Yet, there is nothing in the record suggesting the PBGC was ever notified of the Plan's termination. Nor, for that matter, is there anything in the record in the form of a notice that the assets of the Plan were sufficient to cover all claims, required by 29 U.S.C. § 1341(b), or of a notice that the Plan was underfunded, as provided in 29 U.S.C. § 1341(e). The evidence upon which National Gypsum relies, its own answers to certain interrogatories, does not mandate a finding that the Plan no longer exists. We therefore conclude that the district court did not err in finding that the Plan did not terminate.

### III.

In conclusion, we find that, in the particular circumstances presented here, Hall's suit against National Gypsum, as administrator of the Plan, is equivalent to a suit against the Plan under 29 U.S.C. § 1132(a)(1)(B) and that he is therefore entitled to recover from the assets of the Plan. In that light, we hold that Hall's claim is not affected by National Gypsum's discharge in

17

bankruptcy. We also hold that this suit is timely because the denial of benefits occurred no earlier than December 1983, less than ten years prior to the filing of Hall's complaint in May 1993. Additionally, we find that, because the mechanism for administrative appeal was, according to National Gypsum, not in place at the time of the denial of Hall's claim and because Hall made efforts to secure review of the denial, National Gypsum is equitably estopped from defending this action based upon an alleged failure to exhaust administrative remedies. We hold that Hall was covered under the Plan at the time he became disabled because the evidence demonstrates that National Gypsum had assured its employees that, for purposes of the Plan, they were not considered terminated upon the sale of the plant to IBP. Furthermore, we conclude that the Plan never terminated, that it continues to exist and that National Gypsum, administrator of the Plan, is the entity with the authority to direct payments from the Plan's assets. Finally, because there is no dispute that Hall is vested under the Plan and that he is disabled under the Plan, we hold that he is entitled to benefits thereunder.

We therefore affirm the bulk of the district court's opinion, but vacate the judgment ordering National Gypsum itself to pay benefits to Hall. We remand the case with directions that the court order National Gypsum, as the administrator of the Plan, to secure from the Plan's assets the payment of benefits, as well as attorney's fees and costs of this appeal. We are aware that the Plan's assets are no longer in the hands of National Gypsum. If

18

appropriate, the district court may order National Gypsum, at its own costs, to take whatever legal steps are required to secure the payment of benefits to Hall from the Plan's assets.

AFFIRMED in part, VACATED in part, and REMANDED with directions.