IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 99-20412

---

J. MICHAEL BOURGEOIS,

Plaintiff-Appellant,

versus

THE PENSION PLAN FOR THE EMPLOYEES OF SANTA FE INTERNATIONAL CORPORATIONS; SANTE FE INVESTMENT SAVINGS AND PROFIT SHARING PLAN; SANTE FE INTERNATIONAL CORPORATION,

Defendants-Appellees.

---

Appeal from the United States District Court
For the Southern District of Texas

---

June 14, 2000

Before REYNALDO G. GARZA, HIGGINBOTHAM, and BENAVIDES, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Plaintiff appeals the dismissal of his employment benefits claim for failure to exhaust administrative remedies. We agree that the plaintiff failed to exhaust administrative remedies, but find that the defendants' actions require the recognition of a limited estoppel remedy. Consequently, we VACATE the dismissal and REMAND to the district court with instructions to refer the plaintiff's claim to the pension plans for an initial benefits determination on the merits, without consideration of limitations defenses.

I

J. Michael Bourgeois began working for Sante Fe Engineering and Construction Company (Santa Fe) in 1974. For the relevant time

periods, Sante Fe was a wholly owned subsidiary of Sante Fe International Corporation Holdings (Cayman), Inc. (SFIC), which in turn was a wholly owned subsidiary of Kuwait Petroleum Corporation (KPC).

Until approximately 1989, Bourgeois worked for the Sante Fe Minerals (SFM) division of Sante Fe.  After leaving SFM in 1989, Bourgeois began working for Sante Fe Exploration (SFX), a subsidiary of KPC but not a subsidiary of SFIC.  Bourgeois then perceived a problem with his retirement plan benefits and requested a copy of the Pension Plan that was effective at SFIC from 1985-1996.  He began a series of conversations and correspondences with personnel from SFX, SFIC, and KPC.  These people included Bourgeois's local SFX personnel representative, the senior Human Resources official of SFIC, the chairman of the board of SFX, and the chairman of the board of KPC.

The SFX personnel representative placed Bourgeois in contact with KPC company officials and obtained a hypothetical calculation of employee benefits through the SFIC corporate benefits group in Dallas.  The chairman of the board of KPC, Nader Sultan, exchanged numerous letters with Bourgeois regarding the dispute.  From our review of the record, KPC engaged Bourgeois in discussions regarding his pension plan benefits until KPC successfully sold SFX, the subsidiary in which Bourgeois worked.[1]

---

[1]In letters from Bourgeois to Sultan dated February 18, 1997, and March 3, 1997, Bourgeois alleged that Sultan instructed Bourgeois not to press the pension benefits issue during the impending sale of SFX, insinuating that if Bourgeois kept quiet, he might receive more favorable treatment. We need not decide whether such allegations by Bourgeois constitute evidence of Sultan's implied promises, nor must we decide whether Sultan's responses dated February 24, 1997, and March 11, 1997, constitute adopted admissions of those allegations because Sultan's letters did not dispute Bourgeois's characterizations.

Instead, for the purposes of this appeal, it suffices to note that Sultan and other company officials freely discussed Bourgeois's claims until the sale of SFX was completed.  After the sale, Bourgeois was told that his problems were

2

After the sale of SFX, however, Sultan told Bourgeois that he should present his claim for enhanced benefits to the new owners of SFX, since KPC no longer owned SFX.  In a letter dated March 11, 1997, Sultan essentially halted the prior dialogue, concluding that "we have stated all there is to be said and we having nothing more to add."

Bourgeois filed suit under ERISA[2] against SFIC and two of its ERISA benefits plans, seeking enhanced benefits.  Bourgeois alleged that he was entitled to have his pension benefit calculated using his years of service with both SFIC and SFX and using his gross salary rather than his net salary.  SFIC, the Pension Plan, and the Profit Sharing Plan raised the affirmative defense of failure to exhaust administrative remedies and filed a motion for summary judgment on that basis.  The defendants asserted that Bourgeois failed to follow the formal written claims procedure in the Pension Plan and therefore filed suit prematurely.

Bourgeois states that he received a brochure entitled "Employee Benefits at Sante Fe International Corporation," describing those benefits, including benefits under the two ERISA plans: the Pension Plan and the Profit Sharing Plan.  The brochure stated that the "actual plan documents govern[ed] the use and administration of the[] plans" and advised recipients to discuss their questions with their local personnel representative until the summary plan descriptions (SPD) were issued.  Bourgeois claims he

_____

no longer KPC's.  Regardless of whether Bourgeois was expressly or implicitly warned to keep quiet during the sale, the evidence still suggests that Bourgeois received the runaround and detrimentally relied on the company's previous willingness to discuss his pension issues without reference to the Committee.

[2]29 U.S.C. § 1132(a)(1)(B).

never received an SPD, and the defendants present no evidence that shows otherwise.[3]

Both the 1985 and 1996 versions of the Pension Plan required that a participant submit a disputed claim in writing to the "Committee," which is the plan administrator. If the Committee denies a claim, the participant may appeal the denial by submitting a written request for review to the Committee. The Pension Plan documents do not identify the members of the Committee, nor do they give an address or contact information for the Committee. Bourgeois admitted at his deposition, however, that he was aware of the stated procedure, just not who the Committee was.

Bourgeois testified that he believed his correspondence with Sultan was sufficient under the Pension Plan's claim procedures because Sultan led him to believe that he had some authority to act as an agent of the Pension Plan and because Sultan was the chairman of the board of KPC. Bourgeois admitted, however, that he did not address any written correspondence to the Committee.

The district court granted the motion for summary judgment and dismissed the lawsuit without prejudice, holding that Bourgeois did not show that exhausting his administrative remedies as outlined in the Pension Plan would have been futile, and that he did not show he should be excused from compliance with the written claims procedure. After a denial of his motion for reconsideration, Bourgeois appealed.

II

---

[3]Cf. Stanton v. Larry Fowler Trucking, Inc., 52 F.3d 723, 728 (8th Cir. 1995) (placing the burden of proving notice on the party required to give COBRA notice and noting that "to hold otherwise would place the employee in the untenable position of proving a negative").

4

This court requires that claimants seeking benefits from an ERISA plan must first exhaust available administrative remedies under the plan before bringing suit to recover benefits.[4] Bourgeois claims that resort to the administrative remedies as outlined in the Pension Plan would have been futile because the chairman of the board of SFIC's parent corporation told Bourgeois that he would receive no further consideration of his claim.

This court has recognized an exception to the affirmative defense of failure to exhaust administrative remedies when such attempts would be futile.[5] The defendants argue that futility may only be shown when the plan administrator is hostile or biased against the claimant, citing Denton v. First Nat. Bank of Waco.[6]

In Denton, the claimant argued that it was futile for him to appeal his claim to the benefits review committee, since it was the same committee which initially denied his claim.[7] In such circumstances, this court found that a failure to show hostility or bias on the part of the review committee was fatal to a claim of futility.[8]

---

[4]See Denton v. First Nat'l Bank of Waco, 765 F.2d 1295, 1300 (5th Cir. 1985). The policies behind the exhaustion requirement include upholding Congress's desire that ERISA trustees and not the federal courts be responsible for the actions of plan administrators, providing a clear record of administrative action if litigation ensues, and allowing judicial review of fiduciary action or inaction under the abuse of discretion standard, where applicable, rather than de novo. See id.; Batchelor v. International Broth. of Elec. Workers Local 861 Pension and Retirement Fund, 877 F.2d 441, 444 n.10 (5th Cir. 1989).

[5]See Hall v. National Gypsum Co., 105 F.3d 225, 232 (5th Cir. 1997).

[6]765 F.2d 1295 (1985).

[7]See id. at 1300.

[8]See id. at 1302-03.

The only way in which the current case is distinguishable is that the initial denial of Bourgeois's claim was not by the benefits committee but by other company officials. This court has not decided whether a denial of benefits by a high-ranking officer of the plan sponsor (or an officer of the corporate parent) might be sufficient to establish futility absence a showing of bias or hostility within the benefits committee.

In Communications Workers of America v. AT&T,[9] the D.C. Circuit held that such a showing alone is not sufficient. In that case, the court maintained a strict approach to the futility exception, requiring the claimant to show a "certainty of an adverse decision."[10] The court found that even though the benefits committee had initially denied the claimant's claim, it was not certain that the committee would have denied the claim in its final determination.[11] Company officials had already interpreted the plan in such a way as to preclude the claimant's claim, however, and the committee consisted of company officials who were likely to accept the company's interpretation. Nevertheless, the court held that resort to administrative remedies could not be considered futile, despite the company's preclusive interpretation.[12]

Similarly, Nader's statement that Bourgeois's claim would receive no additional consideration does not establish that the actual Committee would not have considered his claim. Although Bourgeois may have demonstrated that he did not know who the

___

[9]40 F.3d 426, 433 (D.C. Cir. 1994).

[10]Id. (emphasis in original).

[11]See id.

[12]See id. at 432-33.

6

Committee was, no evidence indicates that it would have been futile for Bourgeois to present his claims to the Committee.[13] Therefore, we cannot excuse Bourgeois's failure to exhaust on the grounds of futility.

Bourgeois argues that he received incomplete information regarding the Pension Plan's written claim procedures and so he should be excused from following them.[14] In support of this argument, he asserts that he never received a Summary Plan Description (SPD) containing the claims procedures as required by ERISA, but instead followed the directions he was given in his employee benefits brochure which told him to contact his local personnel administrator if he had any questions. Bourgeois notes that neither the Pension Plan nor the brochure identifies, or gives an address for, the Committee.

In <u>Meza v. General Battery Corp.</u>,[15] the plaintiff argued that he should not be required to exhaust administrative remedies because the defendants never provided him with a copy of the plan

---

[13]The identity of the Committee apparently remains a mystery. The district court did not allow further discovery on this issue before deciding the question of failure to exhaust. That Bourgeois failed to show bias or hostility within the Committee is therefore unsurprising. Whether additional discovery on this issue is necessary is an issue the district court can consider on remand. We do note, however, that Robert A. Lewis was apparently secretary of the Committee as of September 28, 1998. <u>See</u> Defendants' Motion for Summary Judgment, Exhibit 1, Affidavit of Robert A. Lewis [R. 285].

[14]Bourgeois also argues that he sufficiently exhausted his remedies as a matter of law because he made considerable efforts to resolve his claims without litigation. He argues that he followed the information in the brochure and was justified in doing so because the brochure and Pension Plan are somehow inconsistent. The defendants argue that Bourgeois's informal attempts to resolve the dispute do not excuse him from complying with the Pension Plan procedures. Bourgeois did not make this argument in the district court and cannot raise it for the first time on appeal. <u>See</u> <u>Leverette v. Louisville Ladder Co.</u>, 183 F.3d 339, 342 (5th Cir. 1999), <u>cert.</u> <u>denied</u>, 120 S. Ct. 982 (2000). Even on the merits, however, we note that allowing informal attempts to substitute for the formal claims procedure would frustrate the primary purposes of the exhaustion requirement.

[15]908 F.2d 1262 (5th Cir. 1990).

or SPD and thus he had no notice of the procedures available to appeal a denial of benefits.[16]  This court, however, held that plaintiffs seeking ERISA plan benefits are bound by the plan's administrative procedures and must use them before filing suit even if they have no notice of what those procedures are.[17]

In the current case, Bourgeois admits he had a copy of the Pension Plan and had read it when he began corresponding with various officials.  He only argues that the Plan's information was incomplete.  Meza forecloses this argument insofar as Meza imposes a duty to seek the necessary information even if it has not been made available,[18] and Bourgeois knew or should have known that according to the Plan, he was supposed to file a claim with a Committee.

Bourgeois argues that the incomplete plan information forced him to waste years of time trying to resolve his claim and now the company wants to deny any consideration of his claim because of the time delay.  On the surface, it would appear that the lack of complete plan information harmed him, and in dicta Meza allowed that a plaintiff might be able to avoid the exhaustion requirement if he showed that the lack of information harmed him or precluded him from pursuing his administrative remedies.[19]

Bourgeois presented this argument in his appellate reply brief and not in the district court or in his original appellate brief,

---

[16]See id. at 1278.

[17]See id. at 1279.

[18]Id. at 1279.

[19]Id. at 1279-80.

8

which means it is not properly before us,[20] but even on the merits, Bourgeois's harm is not the type of affirmative harm envisioned by Meza, such as a plan administrator's refusing to provide plan documents to a claimant, or a plan administrator's denying benefits because the claimant filed suit instead of pursuing administrative remedies.

Bourgeois's final argument is that SFIC, the Pension Plan, and the Profit Sharing Plan should be estopped from asserting affirmative defenses such as the failure to exhaust administrative remedies. Bourgeois notes that he relied on the information and responses from various officials in pursuing his claim, none of whom ever referred him to the Committee, and that the Pension Plan failed to comply with statutory and regulatory ERISA requirements. We agree that the lack of information and the behavior of various officials of the company led Bourgeois on a wild goose chase, effectively extinguishing his time to apply for benefits. The defendants argue, however, that this court has already rejected such estoppel theories.

A state estoppel cause of action is not cognizable in ERISA suits seeking benefits based on alleged oral modifications of plan terms.[21] Further, the federal courts' power to create common law in ERISA cases "'extends only to areas that federal law preempts but does not address.'"[22]

---

[20]See United States v. Prince, 868 F.2d 1379, 1386 (5th Cir. 1989).

[21]See Weir v. Federal Asset Disposition Ass'n, 123 F.3d 281, 289 (5th Cir. 1997); see also Williams v. Bridgestone/Firestone, Inc., 954 F.2d 1070, 1072-73 (5th Cir. 1992).

[22]Williams, 954 F.2d at 1072 (quoting Rodrigue v. Western and Southern Life Ins. Co., 948 F.2d 969, 971 (5th Cir. 1991)).

9

However, Bourgeois is not seeking benefits based on an estoppel claim nor is he trying to modify the plan. Instead, he argues that the defendants should be estopped from raising a common-law affirmative defense arising from our judicially-imposed exhaustion requirement. Such a theory is not precluded by our case law.

In Hall v. National Gypsum Co.,[23] this court held that a plan administrator could not raise the defense of failure to exhaust administrative remedies because the mechanism for appeal was not in place at the time of the denial of the plaintiff's claim and the plaintiff made efforts to have his claim denial reviewed.[24] The court did not label the theory as "equitable estoppel," yet did quote the following language from the Eleventh Circuit:

> [T]here are occasions when a court is obliged to exercise its jurisdiction and is guilty of an abuse of discretion if it does not, the most familiar examples perhaps being when resort to administrative remedies is futile or the remedy inadequate.[25]

Thus, while Hall did not explicitly recognize an estoppel theory, it does support the proposition that a court should not relinquish its jurisdiction because of a failure to exhaust administrative remedies when there was a valid reason for such failure.[26] A

---

[23]105 F.3d 225 (5th Cir. 1997).

[24]See id. at 233.

[25]Curry v. Contract Fabricators Inc. Profit Sharing Plan, 891 F.2d 842, 846 (11th Cir. 1990), quoted in Hall, 105 F.3d at 232.

[26]Cf. also Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982) (stating that a failure to exhaust EEOC administrative procedures is not a jurisdictional bar, but subject to estoppel); Carl Colteryhan Dairy, Inc. v. Western Pa. Teamsters & Employers Pension Fund, 847 F.2d 113, 121 (3d Cir. 1988) (allowing claim under Multiemployer Pension Plan Amendments Act to proceed despite a lack of prior arbitration, noting that "a party should not be allowed to profit from its own wrongs" and that "equitable principles" should apply to these plans which Congress has characterized as equitable in nature).

10

promissory estoppel theory would recognize such a basis when, as in the current situation, a claimant relies to his detriment on the words and actions of high-ranking company officers who purport to negotiate benefit decisions without actual authority.

In this case, the company presented no evidence that it supplied Bourgeois with a Summary Plan Description, the only source of the Committee's whereabouts, and engaged Bourgeois in negotiations regarding his benefits without ever referring him to the proper channels before issuing what appeared to be a final denial. Thus, we are inclined to estop the defendants from asserting certain defenses.

If we allow estoppel to prevent the defendants from asserting their failure to exhaust defense, the case would be remanded to the district court for a benefits determination. Such court determinations are disfavored,[27] however, and the better course would be to refer the claim to the benefits committee for an initial benefits determination.

Of course, the defendants wish to argue before the Committee that Bourgeois's claims are time-barred, potentially making the referral "a useless formality."[28] If we estop the defendants from making such limitations arguments before the Committee, a referral would no longer be a useless formality.[29] The defendants protest that referral to the Committee is somehow improper because

---

[27]See Communications Workers of Am. v. AT&T, 40 F.3d 426, 433 (D.C. Cir. 1994) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)).

[28]Offutt v. Prudential Ins. Co., 735 F.2d 948, 950 (5th Cir. 1984); Medina v. Anthem Life Ins. Co., 983 F.2d 29 (5th Cir. 1993).

[29]Of course, if the Committee refuses to make a determination on the merits, the district court retains jurisdiction to declare that further proceedings before the Committee are futile. In that case, the district court can make a de novo benefits determination.

Bourgeois never made an initial claim before the Committee.[30] Nevertheless, we have no doubt that the defendants will prefer this outcome to the alternative, in which the district court makes the initial benefits determination.

In sum, while not ruling out the possibility that estoppel might allow a claimant to overcome a defense based on failure to exhaust, we instead merely estop the defendants from arguing that Bourgeois's claim is time-barred before the Committee. Consequently, we VACATE the dismissal and REMAND to the district court with instructions to refer Bourgeois's claims to the Committee for an initial benefits determination on the merits without consideration of limitations defenses.[31] We express no opinion regarding the merits of Bourgeois's claim.

VACATED and REMANDED.

---

[30]In cases that have referred a claim back to a benefits plan for further consideration, the claimant presented an initial claim to the plan. See Schadler v. Anthem Life Ins. Co., 147 F.3d 388, 398 (5th Cir. 1998); cf. Hall, 105 F.3d at 232. The Fourth Circuit, however, has held that remand may also be appropriate when a plan administrator has failed to comply with ERISA procedural guidelines and the claimant has preserved his objection to the administrator's failure. See, e.g., Weaver v. Phoenix Home Life Mut. Ins. Co., 990 F.2d 154, 159 (4th Cir. 1993). In this case, the lack of notice and informal attempts to resolve Bourgeois's claim therefore suggest that remand to the plan is more appropriate than dismissal.

[31]Of course, our holding does not cover limitations arguments that relate to the timing of the federal suit, but that situation was not passed on by the district court, has not been presented to us, and should not come before the Committee.