Randell R. STONE,

v.

The PRUDENTIAL INSURANCE
CO. OF AMERICA.

No. Civ.A. 01–2631.

United States District Court,
W.D. Louisiana,
LaFayette–Opelousas Division.

Oct. 2, 2002.

R. Scott Ramsey, Jr., Morgan City, LA, for Plaintiff.

Harry S. Hardin, III, Raymond J. Salassi, Jr., Corinne G. Hufft, Jones Walker et al., New Orleans, LA, Defendant.

## MEMORANDUM RULING

MELANCON, District Judge.

Before the Court are cross motions for summary judgment filed by the plaintiff and the defendant. For the following reasons, the motion for summary judgment filed by the plaintiff will be denied and the motion for summary judgment filed by the defendant will be granted.

### Background

This is an action arising from the denial of long term disability benefits under an Employment Retirement Income Security Act plan, 29 U.S.C. § 1001 et seq. The parties do not dispute the factual back-ground in this case. Plaintiff, Randell R. Stone, was employed by Global Industries, Ltd. as an electrician. On November 29, 1997, plaintiff allegedly sustained injuries to his back as he descended a gangplank on one of Global's barges. Plaintiff underwent a lumbar laminectomy on September 23, 1998 by his treating physician, Dr. David Jarrott. As an employee of Global, plaintiff was covered by a long term disability insurance policy regulated under the Employment Retirement Income Security Act of 1974 ("ERISA") and issued by Prudential Insurance Company of America ("the Plan"). Prudential served as the Plan administrator and was vested with the discretion to review claims, make decisions regarding eligibility and interpret the Plan. The pertinent provisions of the Plan provided that "Total Disability" exists when the following conditions are met:

(1) Due to Sickness or accidental injury, both of these are true:

(a) You are not able to perform, for wage or profit, the material and substantial duties of your occupation.

(b) After the Initial Duration of a period of Total Disability, you are not able to perform for wage or profit the material and substantial duties of *any job* for which you are reasonably fitted by your education, training or experience. The Initial Duration is shown in the Schedule of Benefits.

(2) You are not working at any job for wage or profit.

(3) You are under the regular care of a Doctor.

Thus, under the Plan's Total Disability provision, section (1)(a), the "own occupation" clause, an employee is entitled to receive Long Term Disability benefits for 24 months if he or she is unable to perform the duties of his or her own occupation. Also, under section (1)(b), in order to con-

tinue receiving Long Term Disability benefits under the Plan, an employee must be unable to perform the material and substantial duties of "any job" for which he or she is qualified based on "education, training or experience." *(R. 9; 16).*

Plaintiff was paid disability benefits by Prudential under the "own occupation" clause for twenty-four (24) months, December 4, 1998 through December 4, 2000. Plaintiff's long term disability benefits were initially discontinued effective January 1, 2001, under the "any occupation" clause, by Prudential's letter dated November 27, 2000. Based on plaintiff's request for a review of the decision to terminate his benefits, Prudential reinstated plaintiff's benefits effective January 1, 2001 while reconsidering its decision. In reevaluating his claim, Prudential referred plaintiff to Dr. D.I. Kewalramani for a medical examination. Dr. Kewalramani issued a report on August 25, 2000. By letter dated August 16, 2001, Prudential informed plaintiff that he did "not meet the requirements to receive benefits under the terms" of the Plan and that plaintiff's long term disability benefits would be terminated effective October 1, 2001. Thereafter, plaintiff again appealed Prudential's decision to terminate his long term disability benefits. In reevaluating plaintiff's eligibility, Prudential requested that plaintiff submit to a medical examination by Dr. William Knight. Based on Dr. Knight's report, Prudential upheld its decision to terminate plaintiff's long term disability benefits. Plaintiff filed the instant lawsuit on December 17, 2001.

## Summary Judgment Standard

A motion for summary judgment shall be granted if the pleadings, depositions, and affidavits submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R.Civ.P. 56.* Once the movant produces

such evidence, the burden shifts to the respondent to direct the attention of the court to evidence in the record sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The responding party may not rest on mere allegations made in the pleadings as a means of establishing a genuine issue worthy of trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. *Id.* Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

## Analysis

In his motion, plaintiff contends that the Plan Administrator abused its discretion by denying him benefits based on its conclusion that plaintiff could perform "any occupation" because he was classified for "sedentary work" and there were jobs available which plaintiff could perform. In its cross-motion, Prudential asserts that plaintiff's action should be dismissed because (1) plaintiff failed to exhaust his administrative remedies; (2) plaintiff filed the instant motion without proper supporting documentation; and (3) Prudential did not abuse its discretion in denying plaintiff's claim for long term benefits. The Court will address these issues in turn.

### 1. Procedural Claims Raised by Defendant

#### i. Failure to exhaust

Defendant asserts that plaintiff's action should be dismissed because plaintiff failed to exhaust his administrative

remedies by filing the instant suit before the Plan administrator had issued its final decision in plaintiff's appeal. ERISA itself is silent on the question of exhaustion of administrative remedies and imposes no exhaustion requirement. However, courts have uniformly applied the exhaustion doctrine to suits brought under ERISA in keeping with Congress' intent in enacting ERISA. *Hall v. National Gypsum Co.,* 105 F.3d 225, 231 (5th Cir.1997). The purpose of the exhaustion requirement is to minimize the number of frivolous ERISA suits, promote the consistent treatment of benefit claims, provide a non-adversarial dispute resolution process, and decrease the time and cost of claims settlement. *Id.* The requirement also serves to provide a clear record of administrative action if litigation should ensue. *Id.*

■ Although plaintiff filed the instant lawsuit prior to the Plan Administrator's final decision of plaintiff's appeal, it is undisputed that defendant ultimately denied plaintiff's appeal. The purposes of the exhaustion doctrine have been satisfied in this case making the invocation of the exhaustion doctrine as a bar to suit inappropriate in this instance. When resorting to administrative remedies would be futile, a court is obliged to allow the action to proceed. *Hall,* 105 F.3d at 232. In this action, as in most similar actions, the Court would likely have stayed the suit until the plaintiff exhausted his administrative remedies. Such action would be futile because the Plan administrator has already reviewed plaintiff's claim under its administrative process.

### ii. Failure to file the administrative record

■ Defendant also asserts that the Court should dismiss plaintiff's action because he filed the instant motion before the administrative record was filed into the record of this action. In plaintiff's memorandum in opposition to defendant's motion, plaintiff's counsel represents that he received a copy of the administrative record from defense counsel prior to filing his motion and assumed that defense counsel had also filed the administrative record with the Court based on the requirements of the Court's ERISA Case Order. While plaintiff concedes that the administrative record was not filed into the record at the time his motion was filed, the complete administrative record was filed into the record by defendant when its cross-motion for summary judgment was filed.[1] As the record is complete for the Court's review in considering the instant cross-motions, there can be no prejudice caused by plaintiff's failure to file it with his motion.

### 2. The Substantive Claim

■ Prudential's decision that Stone is not totally disabled as defined by the Plan is a factual determination subject to review by the court under an abuse of discretion standard. *Meditrust Financial Services Corp. v. The Sterling Chemicals, Inc.,* 168 F.3d 211, 213 (5th Cir.1999). In reviewing a decision for abuse of discretion, the court considers whether the decision was arbitrary or capricious. *Sweatman v. Commercial Union Ins. Co.,* 39 F.3d 594, 601 (5th Cir.1994). "When reviewing for arbitrary and capricious actions resulting in an abuse of discretion,

---

1. The Administrative Record received by plaintiff did not contain Prudential's final denial nor Dr. Knight's report. Those documents, however, are contained in the complete Administrative Record filed by defendant with his cross-motion for summary judgment which the Court will review in considering plaintiff's and defendant's motions.

we affirm an administrator's decision if it is supported by substantial evidence. A decision is arbitrary only if 'made without a rational connection between the known facts and the decision or between the found facts and the evidence.'" *Meditrust,* 168 F.3d at 215 *quoting Bellaire Gen. Hosp. v. Blue Cross Blue Shield,* 97 F.3d 822, 828–29 (5th Cir.1996). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Girling Health Care, Inc. v. Shalala,* 85 F.3d 211, 215 (5th Cir.1996) *quoting Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). A federal court owes "due deference to an administrator's factual conclusions that reflect a reasonable and impartial judgment." *Pierre v. Connecticut Gen. Life Ins. Co.,* 932 F.2d 1552, 1562 (5th Cir.1991). In this case, because Prudential serves as both the insurer and administrator of plaintiff's long term disability plan, the Court must apply a "sliding scale standard" and accord Prudential's decision less than full deference. *Vega v. National Life Ins. Serv., Inc.,* 188 F.3d 287, 297–98 (5th Cir.1999). The Court's review is limited to the evidence of the administrative record. *Id.* at 299.

■ Prudential asserts its decision to deny plaintiff's claim for disability benefits beyond the 24–month "own occupation" period must be upheld as a matter of law as there is compelling record evidence to support Prudential's determination that plaintiff was capable of performing sedentary work and therefore was not totally disabled from "any occupation." Defendant's Memorandum in Support; Defendant's Opposition Memorandum. Plaintiff argues that Prudential's decision to deny him further long term disability benefits after his first 24 months of disability is contrary to the weight of medical evidence provided by his treating physician, Dr. Jarrott, that he was "100% totally disabled for substantial exertion," and is therefore an abuse of discretion. Plaintiff's Memorandum in Support; Plaintiff's Opposition Memorandum.

Prior to making its final determination that plaintiff's benefits should be terminated effective March 8, 2002, Prudential notified plaintiff on two previous occasions that it considered him to be capable of sedentary work and that his long term benefits would be terminated. On both occasions plaintiff requested and was granted a review of Prudential's decision. The administrative record provides the following account of Prudential's decisions to terminate plaintiff's benefits.

On April 4, 2000, Prudential notified plaintiff that his long term disability benefits under the "own occupation" clause of the Plan would expire on December 4, 2000. 4/4/00 Prudential Letter. Prudential informed plaintiff that it would conduct an evaluation for continued benefits under the Plan's "any occupation" clause. *Id.* Following its evaluation, Prudential notified plaintiff by letter dated November 27, 2000 that his claim for benefits would be denied effective January 1, 2001 based on its conclusion that plaintiff was not "totally disabled as defined by the Plan." 11/27/2000 Prudential Letter. Prudential based its decision on the medical information contained in plaintiff's claims file which consisted of the medical reports and office notes of plaintiff's treating physician, Dr. David Jarrott. *Id.* Dr. Jarrott's reports stated that plaintiff's surgery had produced "good results" and, although plaintiff was "disabled for climbing, jumping, and manual labor," that he was clear to "return to activities of daily living." 4/20/99 Report of Jarrott. While Dr. Jarrott stated that plaintiff was permanently disabled from his job as an electrician, he did not indicate plaintiff was disabled with regard to any other occupation. 2/2/99

Report of Jarrott. In his September 5, 2000 report, Dr. Jarrott defined plaintiff's total disability as "unable to engage in sustained exertion, bend, lift more than 10 pounds, jump, climb or sit for extended periods." 9/5/00 Report of Jarrott. In addition to Dr. Jarrott, Prudential also relied upon an examination of plaintiff performed at Prudential's request by Dr. D.L. Kewalramani on August 25, 2000. 8/25/00 Independent Medical Examination. Dr. Kewalramani's report stated that plaintiff was incapable of "pushing, pulling or lifting more than 50 [pounds]", but after undergoing rehabilitation "should be able to return to sedentary type of job." *Id.*

 Upon receiving the notice from Prudential that his long term benefits would be terminated, plaintiff requested that Prudential reconsider its decision in a letter dated December 5, 2000. 12/5/00 Plaintiff's letter. In response to plaintiff's request, Prudential reinstated plaintiff's benefits effective January 1, 2001 pending the appeal. On August 16, 2001, Prudential informed plaintiff that it had completed its review of his claim and that he did "not meet the requirements to receive benefits under the terms" of the Plan. 8/16/01 Prudential Letter. In its termination letter, Prudential cited information in plaintiff's claims file at that time, including a Work Status Form dated June 25, 2001, completed by Dr. Jarrott. 6/25/01 Work Status Form. The Work Status Form indicated that plaintiff was restricted "100% from sustained exertion," but was capable of lifting, carrying, pushing and pulling

items weighing up to five (5) pounds and of sitting and standing in 30 minute intervals.[2] *Id.* Prudential also referred to an in-house vocational rehabilitation analysis which it conducted to determine whether plaintiff was capable of performing the material and substantial duties of any job for which he possessed the necessary education, training, and experience. 2/7/01 Prudential Letter. Prudential indicated that its Vocational Rehabilitation Specialists had generated a "Transferrable Skills Analysis Report" identifying nearly 200 "gainful occupations" for which plaintiff was qualified, as well as a labor market study indicating that at least four of those occupations were within plaintiff's local labor market, were within plaintiff's physical limitations and restrictions and were providing on the job training to new employees. 8/16/01 Prudential Letter.[3]

Plaintiff appealed Prudential's second decision to terminate his long term benefits by letter dated September 21, 2001. 9/21/01 Plaintiff's Letter. In its final decision letter to terminate plaintiff's disability benefits dated March 8, 2002, Prudential relied on the report of Dr. William Knight, an orthopedic surgeon retained by Prudential to perform a medical examination on plaintiff in January 2002. Dr. Knight reported that while plaintiff suffered from low back and left leg pain, there were "inconsistencies" in his examination suggesting plaintiff's "embellishment of [his] symptoms." Dr. Knight's Report. Dr. Knight concluded that although plaintiff could not likely perform the work of an

2. Prudential contacted Dr. Jarrott on several occasions requesting an update on plaintiff's medical restrictions. Prudential Correspondence. In response to Prudential's requests, Dr. Jarrott submitted a Work Status Form detailing plaintiff's medical restrictions on June 25, 2001.

3. While plaintiff argues that Prudential abused its discretion because it did not retain

an actual vocational rehabilitation specialist, such action is not required on the part of the Plan administrator. *See Duhon v. Texaco, Inc.,* 15 F.3d 1302, 1309 (5th Cir.1994) ("Given [the Plan's] undemanding language and the medical evidence in this case, the Plan administrator could competently determine disability without vocational testimony.")

electrician, he was capable of performing "sedentary level employment." *Id.* Based on Dr. Knight's report, Prudential concluded that plaintiff had the physical capacity to perform sedentary work and, based upon plaintiff's education, training and experience, that he possessed the necessary transferrable skills to obtain gainful employment. 3/8/02 Prudential Letter. In addition to Dr. Knight's medical examination of plaintiff, Prudential requested and reviewed an update of plaintiff's medical information from Dr. Jarrott. Dr. Jarrott submitted two separate reports in which he stated that plaintiff was "100% totally disabled for substantial exertion." 5/21/01; 8/29/01 Notes of Follow-up Office Visits. Also, Dr. Jarrott submitted a report of a follow-up office visit on December 20, 2001 in which he stated that plaintiff was "100% totally disabled for work with an onset in 1997." 12/20/01 Report of Follow-up Office Visit.

 Plaintiff argues that Prudential erred in failing to defer to the follow-up reports of Dr. Jarrott, plaintiff's treating physician. There is no treating physician preference in the ERISA context and an administrator does not act arbitrarily when it bases its decision to deny benefits on the opinions of independent physicians who disagree with those of the beneficiary's physicians. *Salley v. DuPont De Nemours & Co.*, 966 F.2d 1011, 1016 (5th Cir.1992); *Sweatman*, 39 F.3d at 602–03.[4] Dr. Kewalramani's and Dr. Knight's examinations of plaintiff provided two independent assessments of plaintiff's condition and both concluded that he was not dis-

abled. The Plan administrator's reliance on the opinions of the independent medical consultants was not an abuse of discretion.

The sole issue before the Court is whether Prudential abused its discretion in denying plaintiff's claim. *Pierre*, 932 F.2d at 1559, 1562. The record provides that Prudential adequately investigated plaintiff's condition and analyzed all of his records. When plaintiff requested a reconsideration of Prudential's decisions, Prudential secured additional medical examinations and opinions as well as vocational and labor market information.[5] The Court finds that Prudential did not abuse its discretion by denying plaintiff's claim. The administrative record contains substantial evidence to show that plaintiff is capable of performing some sedentary work for which he is qualified.

### Conclusion

Considering the issue that is before the Court, whether the Plan administrator abused its discretion in finding that Randell R. Stone was not totally disabled, and reviewing the factual determinations for abuse of discretion with a "sliding scale" standard, the record reflects that the Plan administrator's determination was based on concrete evidence. Accordingly, plaintiff's motion for summary judgment will be denied and defendant's motion for summary judgment will be granted.

---

4. Further, Dr. Jarrott's reports do not undermine Prudential's decision, as they were written after plaintiff learned he was being terminated and were unaccompanied by objective medical evidence indicating that plaintiff's condition was different from Dr. Jarrott's previous determinations that plaintiff could "return to activities of daily living" but was disabled for "climbing, jumping, and manual labor" and "for sustained exertion." *See Gooden v. Provident Life & Acc. Ins. Co.*, 250 F.3d 329, 334 (5th Cir.2001).

5. *See, Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 602–03 (5th Cir.1994) (accepting administrator's reliance on diagnoses of independent physicians).